JOURNAL ENTRY AND OPINION
{¶ 1} The contemnor, Brent L. English, appeals from a municipal court order finding him in direct criminal contempt and fining him $250. Appellant urges that the court's decision was erroneous because his conduct was not contemptuous and did not constitute an imminent threat to the administration of justice. He also contends that he did not receive due process. We find the court did not abuse its discretion by finding appellant in contempt in a summary proceeding. Therefore, we affirm.
 Procedural History {¶ 2} The contempt order at issue here arises out of a criminal jury trial in the case of Brooklyn v. Matthew T. Frank, Parma Municipal Court Case No. 07TR01304, on charges of driving under the influence of alcohol and failure to maintain an assured clear distance ahead. The record on appeal includes a compact disk allegedly containing a recording of the trial proceedings. However, we were unable to play the disk on either a compact disk player or on a computer. Hence, our review is limited to the written transcript of the proceedings.
 {¶ 3} During the trial, there were several confrontations between the court and appellant, who was the defendant's attorney at trial. In the first instance, appellant was questioning one of the complaining witnesses: *Page 4 
 Q. Were you talking to the police like you're talking to the jury here today?
 A. I mean, we were, you know, we were pretty loud and when you are hit by somebody who appears drunk you are scared also.
 Q. I'm sorry, could you answer my question. The question is are you talking to the police-
 MISS GOLDBERG [the prosecutor]: Your honor, objection, she was answering his question.
 MR. ENGLISH: That's not responsive.
 THE COURT: Yes it was, it was, you don't like it but it was responsive.
 MR. ENGLISH: Well wait Your Honor-
 THE COURT: What you want to argue, go ahead.
 MR. ENGLISH: No I don't want to argue.
 THE COURT: Okay.
 MR. ENGLISH: I just respectfully object.
 {¶ 4} In another instance, counsel was questioning another complaining witness about what he had told police during his emergency telephone call:
 Q. There's nothing on the tape you indicating to 911 the guy just hit me with his vehicle. *Page 5 
 MISS GOLDBERG [The Prosecutor]: Objection, Your Honor.
 THE COURT: We all heard that, of course there is.
 MR. ENGLISH: I'm sorry, Your Honor. First of all, A) this [is] cross-examination, secondly, he had said that somebody had already done that at the time-
 THE COURT: Don't yell at me or I am going to show you where the jail cells are at today. You got that?
 MR. ENGLISH: I'm not yelling at you, Your Honor.
 THE COURT: Lower your voice, collect yourself. Clearly, we heard the tape where he said he tried to run me over. We all heard that, so don't try to say to the witness that it's not on the tape. I'm not going to let you do it.
 MR. ENGLISH: Your Honor, that wasn't the question.
 THE COURT: Okay.
 MR. ENGLISH: I'm sorry. Could we replay the tape to the witness now.
 THE COURT: Sure we can.
 {¶ 5} A third incident occurred during the re-re-direct examination of police officer Anthony Psota. There was testimony that the defendant had *Page 6 
poured out the contents of a cup that had been in his car. The cup had contained a liquid and ice cubes. The prosecutor inquired:
 Q. * * * [C]ould the drink have been in his car for days?
 A. No.
 Q. Could the drink have been in his car for hours in your opinion?
 A. No.
 MR. ENGLISH: Objection, no foundation.
 THE COURT: The ice cubes were laying right there, we know how long an ice cube can last, I can't believe you're doing this even.
 MR. ENGLISH: Your Honor-
 THE COURT: What's the basis of the objection?
 MR. ENGLISH: Your Honor, I fundamentally object. First of all, I'm sorry but I especially object to you saying what you just said.
 THE COURT: Well I object to you keep asking a question is the drink fresh or not and we all just heard there's ice cubes there. We all know that there's some common sense things that just are all known to everybody in this room.
 MR. ENGLISH: There's another perhaps explanation. *Page 7 
 THE COURT: I'd like to move the Trial along a little faster instead of asking 20 minutes of question of how long a drink has been laying there when we all know there's ice cubes there, that's all the testimony has been that there had been ice cubes there and you want to keep calling this point. You're wasting our time and I'd like you to stop it.
 MR. ENGLISH: Your Honor, I object to everything you just said.
 THE COURT: Good, you're objection is noticed.
 * * * *
After the court excused the jury, the court addressed appellant again:
 THE COURT: * * * Mr. English, I'm charged with controlling the tempo of this Trial and moving it along. You have asked one, the same question, I, probably if I went through the record I would probably find 15 questions that you have asked three or four times the same exact question. I have granted liberal leeway in absolute redundancy, repetitiveness and everything else, but at times you've bordered on ridiculous, but that's your Trial strategy and I've let you do that, but I am not going to get into a contest with you every time you want to do something * * * * I'm not going to have your in *Page 8 
temperamental [sic] comments and shouting at me every time I try to move this Trial along. Hold your tongue. I'm not going to tolerate it. * * * [I]n this room, this Court, this Judge controls the tempo, and how this Trial proceeds. I have granted you liberal leeway but I will not let you continue to border on the absolute ridiculous. I've had about enough of it, and I'm not going to take any more of your outbursts. Do we understand each other clearly?
 * * * *
 MR. ENGLISH: Your Honor you and I disagree fundamentally about not only this but about a lot of things that happened in this case and I would like to say for the record that I have not shouted at you at all. That I have not in any way been disrespectful. * * * *
 THE COURT: Yes, you've yelled at this Court on a couple of occasions. * * * * And you're going to control your temperament [sic] and I'm not going to put up with our screaming and yelling at witnesses, this Court or anybody else. You're just not going to do it. You are going to try to behave yourself and represent your client zealously, as you should, but with some dignity and some decorum, and you have not done that thus far. *Page 9 
 MR. ENGLISH: I disagree.
 THE COURT: * * * I just want it to be clear that the next time you have an outburst and you act like a child I am going to hold you in Contempt of Court. Whether you agree with me or not won't matter to me. Do you understand that?
 MR. ENGLISH: I do not understand what you mean acting like a child.
 THE COURT: Okay. It means when you shout at the Court when I don't agree with you and don't sustain one of your objections. That's what I mean. Next time you raise your voice to this Court and shout at this Court and put on a childish temper tantrum, I'm going to hold you in Contempt of Court. That's what I mean, I can't speak it any more clearly.
 {¶ 6} Finally, during appellant's examination of the defendant's girlfriend, a conference was conducted outside the presence of the jury during which appellant proffered testimony that the defendant's voice recorded on the night of his arrest sounded normal, and not as if he was under the influence of alcohol. The court warned appellant that if he presented this testimony to the jury, the prosecution would be allowed to cross-examine the witness about whether the *Page 10 
criminal defendant had sounded impaired when he was arrested for drug possession. Appellant objected, and declined to offer the proffered testimony. The court then discharged the witness as cumulative. Appellant objected to this ruling as well. The court inquired:
 THE COURT: Why, what else do you want to ask her? You want to keep her? Do you want to keep her?
 MR. ENGLISH: Your Honor you said that the witness is cumulative, that I don't know how to practice law and that she should leave, so okay.
 THE COURT: I didn't say that and I've warned you before about disrespecting this Court. I'm not warning you anymore. I didn't say those things. This is recorded. I've had it with your disrespect. I've had it with your misrepresentations and your flat out lies to this Court. I will not take it any more. I am finding you in contempt of Court and I'm fining you $250.00 for the way you addressed this Court, the way you mischaracterize everything I've said and done and the way you behave. That childish, boorish behavior will not be tolerated. You are in direct contempt of court and I'm fining you $250.00. Now, you as an adult, an attorney, may *Page 11 
decide to call this witness or not, but that is your decision; what would you like to do?
 MR. ENGLISH: You already told me Your Honor that you are going to permit the Prosecutor to ask questions that would be very inflammatory and adverse to my client.
 THE COURT: They would be absolute cross-examination [sic] to what you may want to ask. I just did you a favor. I absolutely will not tolerate this childish, loud, extravagant behavior. It's not going to happen.
 MR. ENGLISH: Your Honor it has not been loud, it's not been extravagant and it's not been childish, it has been respectful in every respect.
 THE COURT: Yes, you practice at all due respect and then you scream at me. That doesn't work.
 MR. ENGLISH: I'm not screaming at you.
 THE COURT: That doesn't work.
On September 11, 2007, the court entered the following written order:
 Throughout the course of the proceedings involving the Jury Trial of the City of Brooklyn v. Matthew T. Frank (Case No. 07 TRC 1304), the Court has been forced to repeatedly discourage Attorney Brent English from engaging in pointing, shouting, jumping, stomping his feet and otherwise disrespectful conduct. Despite several cautionary warnings from this Court, the contemnor, Brent *Page 12 
L. English, continued to engaged in disrespectful and disruptive behavior.
 The contemnor, Brent L. English is hereby found to be in direct contempt of court for his repeated outbursts and failure to maintain a professional decorum essential to the maintenance of an orderly system of justice.
 The contemnor, Brent L. English is hereby found to be in direct contempt of court, and shall be fined $250. There shall be no jail term.
 Law and Analysis {¶ 7} Findings of contempt are reviewed for abuse of discretion.State v. Kilbane (1980), 61 Ohio St.2d 201, paragraph one of the syllabus. An abuse of discretion suggests that the court's order was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 8} Contempt may be civil or criminal in nature, and may be direct or indirect. A criminal contempt order serves the purpose of punishing the offender and vindicating the court's authority, while a civil contempt attempts to coerce compliance with the court's directives.Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 254. Indirect contempt occurs outside the court's presence. Direct contempt is misbehavior that occurs in the court's presence and which obstructs the due and orderly administration of justice. R.C. 2705.01 and 2705.02;State v. Webster, Hamilton App. Nos. C-070027 and C-070028,2008-Ohio-1636, ¶ 56. The parties here agree that the court's order in this case found *Page 13 
appellant to be in direct, criminal contempt of court. The summary, punitive nature of the court's order compels us to agree.
 {¶ 9} In his first assignment of error, appellant argues that the court abused its discretion by finding him in direct contempt and summarily punishing him. "Courts must carefully discern between words that are contemptuous only to the court's sensibilities (which are not punishable), and those that pose an actual or imminent threat to the administration of justice (which are punishable): `Because of the summary nature of a direct contempt conviction, the court must be careful to guard against confusing actions or words which are contemptuous to the judge's personal feelings or sensibilities and actions or words which constitute punishable, criminal contempt of a summary nature because of posing an actual or imminent threat to the administration of justice.'" Webster, at ¶ 57.
 {¶ 10} Appellant's behavior at trial did not merely offend the court's sensibilities, but undermined the court's authority. Appellant did not accept the court's rulings. He repeatedly argued with the court, characterizing (and often mischaracterizing) the court's rulings in dramatic, argumentative fashion. These arguments repeatedly challenged the court's authority and effectively halted the proceedings. Appellant also refused to address issues the court *Page 14 
attempted to raise, [1] choosing instead to go off on his own tangent, and again effectively interfering with the proceedings. The court could summarily punish appellant for this threat to the orderly administration of justice.
 {¶ 11} Appellant's second assignment of error contends that a summary finding of contempt was not appropriate, and due process required a full hearing. We disagree. A court may summarily punish a direct contempt if (1) "the determinative issues of the offense are known to the court personally," and (2) "the effect of the contumacious conduct * * * create[s] a `need for speed' to immediately suppress the court-disrupting misbehavior and restore order to the proceedings."In re Davis (1991), 77 Ohio App.3d 257, 263, 264. In this case, the determinative issues were known to the court personally because they occurred before the judge during trial. Although the contempt finding was not actually made until near the end of trial, the only reason for the delay was that the court attempted to avoid an actual contempt citation by repeatedly warning appellant that his behavior was inappropriate. Appellant's behavior was disruptive of the proceedings and immediate punishment was necessary to restore order.
 Judgment affirmed. *Page 15 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] When the court asked appellant the basis for his objection to the police officer s testimony that the drink could not have been in the car for hours, appellant replied that he objected to the court's objection. Similarly, when the court asked what additional testimony appellant intended to elicit from the defendant's girlfriend, appellant responded by asserting (incorrectly and irrelevantly) that the court had just said he did not know how to practice law. *Page 1