[Cite as *Cleveland v. Bright*, 2020-Ohio-5180.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                    :

    Plaintiff-Appellee,          :

                                  No. 108989

    v.                           :

ASIA S. BRIGHT,                       :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                 AND REMANDED
**RELEASED AND JOURNALIZED:**  November 5, 2020

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2019 CRB 007678

---

### *Appearances:*

Barbara A. Langhenry, Cleveland Director of Law, Karrie Howard, City of Cleveland Chief Prosecuting Attorney, and Karyn J. Lynn, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, *for appellant.*

PER CURIAM:

**{¶ 1}** Defendant-appellant, Asia Bright, appeals the trial court's imposition of community control sanctions. She raises one assignment of error for our review:

> A sentence of community control sanctions was improperly imposed because community control sanctions are not an available punishment for criminal contempt of court.

**{¶ 2}** Although not for the same reasons argued by Bright, we find merit to her assigned error. We therefore affirm Bright's jail time and fine sanctions, reverse and vacate her community control sanctions, and remand for the trial court to issue a new judgment entry reflecting that Bright is not subject to five years of community control sanctions.

## I. Introduction

**{¶ 3}** Because this issue appears to be one of first impression, it will be helpful to review the long history of contempt law. First, however, we must address the arraignment room judge's actions. Bright spent 15 days in jail for contempt — and was additionally sentenced to five years of community control sanctions — for saying a few undesirable words about and in front of the arraignment room judge and rolling her eyes. The arraignment room judge responded emotionally to Bright's actions rather than approach her in a dignified and judicious manner. Although judges have inherent and statutory contempt powers to prevent the obstruction of the administration of justice, judges are not supposed to abuse this power when they become "personally embroiled" with defendants who appear before them. *See State v. Hudson*, 7th Dist. Mahoning No. 10 MA 157, 2011-Ohio-

6424, ¶ 56, quoting *State v. Daly*, 2d Dist. Clark No. 06-CA-20, 2006-Ohio-6818, ¶ 52 ("'An accused contemnor has the right to an impartial judge who has not become personally embroiled in the contempt issue.'"); *Offutt v. United States*, 348 U.S. 11, 13-14, 75 S.Ct. 11, 99 L.Ed. 11 (1954). Moreover, judges have long had the ethical obligation to recuse themselves from a case where they can no longer be neutral and detached, or even where their impartiality might be reasonably questioned. *See* Canon 3(B) of the Code of Judicial Conduct. As explained by the United States Supreme Court in *Taylor v. Hayes*, 418 U.S. 488, 501, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974):

> [C]ontemptuous conduct, though short of personal attack, may still provoke a trial judge and so embroil [the judge] in controversy that [the judge] cannot "hold the balance nice, clear, and true between the [s]tate and the accused[.]" *Tumey v. Ohio*, 273 U.S. 510, 532[, 47 S.Ct.437, 71 L.Ed. 749] (1927). In making this ultimate judgment, the inquiry must be not only whether there was actual bias on [the judge's] part, but also whether there was "such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588[, 84 S.Ct. 841, 11 L.Ed.2d 921] (1964). "Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties," but due process of law requires no less. *In re Murchison*, 349 U.S. 133, 136[, 75 S.Ct. 623, 99 L.Ed. 942] (1955).

**{¶ 4}** One could question whether the arraignment room judge met her ethical obligations in this case.

## II. Procedural History and Factual Background

{¶ 5} In May 2019, Bright was charged with assault and aggravated disorderly conduct.[1] While Bright was in the arraignment room on these charges, the arraignment room judge asked her to "have a seat" while she called a public defender to represent Bright. According to the arraignment room judge, Bright rolled her eyes as she was waiting. The public defender arrived at some point later. Bright's attorney and the court discussed a no-contact order and a GPS monitor, and the judge told Bright's attorney that Bright was "going to spend some time with me today." The judge said that she was "so glad to have company" and instructed the court reporter to be on her "best behavior" because "we have company." The judge further told Bright's attorney that she was "hoping" to "get" Bright's assault case. The judge then stated that she heard Bright say, "corny as f*ck." Bright responded, "I said corny the way you're treating me." The judge told Bright to "close [her] mouth," and had her removed from the arraignment room and placed in a holding cell.

{¶ 6} Later that same day, the arraignment room judge brought Bright back to the arraignment room. According to the judge, she learned that when Bright was in the holding cell, Bright repeatedly referred to the judge as a "b*tch" so loudly that another judge had to close his door because Bright "interrupted him" while he was "trying to perform his duties."

---

[1] *See Cleveland v. Bright*, Cleveland M.C. No. 2019 CRB 006206. This case is not before us on appeal.

{¶ 7} The arraignment room judge advised Bright that she was being charged with two counts of contempt of court and one count of obstruction of official business and that bond would be set. The judge suggested that Bright had mental-health issues, which Bright's counsel denied. Bright explained that she had been upset because she did not have the opportunity to speak during her arraignment. The judge told Bright that she did not let her speak because the judge was waiting for Bright's counsel to appear. The judge then stopped and said, "you can keep rolling your eyes." Bright responded that she was not rolling her eyes and said that she was about to cry. The judge replied, "that's not acceptable." Bright's counsel then instructed Bright to stop interrupting the court and stated that Bright was "not even crying" and did not "have any tears." Bright told her counsel to "get away from" her and told the court that her counsel was "rude." The court then instructed the bailiff to take Bright "away" saying, "bye bye."[2]

{¶ 8} Bright was charged with three counts of contempt of court in violation of R.C. 2705.02.[3] In support of the charges, the arraignment room judge signed an affidavit that stated Bright, "while in a courtroom, * * * did repeatedly refer to the court as a 'b*tch,' and called the courtroom 'sh*t.'" On June 4, 2019, Bright entered a plea of not guilty to all three charges.

---

[2] The record does not indicate where the bailiff took Bright.

[3] Although the arraignment room judge originally told Bright that she was being charged with two counts of contempt of court and one count of obstruction of official business, the record reflects that she was charged with three counts of contempt and was not charged with obstruction of official business.

**{¶ 9}** At a hearing on August 13, 2019, during which Bright, Bright's new attorney, and a prosecutor were present, Bright's counsel orally moved to dismiss all three contempt charges, and the court denied the motion. Bright withdrew her plea of not guilty and entered a plea of guilty to the first charge of contempt that involved her comment to the judge that the proceedings were "corny as f*ck." The trial court accepted her guilty plea, and the remaining two contempt charges were nolled. The court imposed 30 days of incarceration at the Cleveland House of Corrections, suspended 15 days of the jail time, and ordered that Bright serve the 15 days from August 13 to August 27, 2019. The court also imposed a $250 fine and suspended it, and imposed five years of community control sanctions, which included conditions that Bright complete anger management classes and read an apology letter in open court.[4]

**{¶ 10}** On September 4, 2019, Bright appeared before the arraignment room judge and submitted her apology letter. The judge told Bright that she needed to write another letter titled, "How would you feel if I called your mother a b*tch."[5] The judge then addressed the other people in the courtroom and recounted, in detail, Bright being in the arraignment room for assault, the allegations underlying the assault charge, and the contempt incident. The judge told Bright, "Let me explain something to you. You are on five years of active probation to me. It's [going to] be a long five years." Bright's response was inaudible, but the bailiff told the court that

---

[4] The record does not reflect whether Bright completed anger management classes.
[5] The record does not reflect whether Bright submitted this second letter.

Bright said, "This is some bullsh*t." Bright insisted that she said, "Oh my goodness," but she was again charged with contempt, and the court instructed that she be taken "to the holding cell."[6]

{¶ 11} Bright timely appeals the trial court's August 13, 2019 judgment entry. Her sanctions were stayed pending this appeal.

**III. Law and Analysis**

{¶ 12} In her sole assignment of error, Bright argues that the trial court's imposition of community control sanctions was improper because R.C. 2705.05 does not provide for "community control sanctions as a potential penalty" for contempt. Alternatively, Bright argues that even if such sanctions were available, they were unreasonable under the circumstances because five years of community control sanctions are disproportionate to her conduct.

{¶ 13} R.C. 2705.05 sets forth procedures and statutory penalties for contempt. The procedures include conducting a hearing where the court must investigate the charge, give the accused the opportunity to present a defense, and determine whether the accused is guilty of contempt. R.C. 2705.05(A). The penalties include different levels of fines and jail terms depending on whether the offense is a first, second, or third offense. R.C. 2705.05(A)(1) − (3). The minimum

---

[6] This contempt charge initiated a new case: *Cleveland v. Bright*, Cleveland M.C. No. 2019 CRB 015370. The docket in this case reflects that Bright was found guilty of contempt and sanctioned to 30 days in jail, suspended; a fine of $250, suspended; and two years of community control sanctions. A later journal entry notes that the two years of community control sanctions were "inactive." This additional contempt case is not before us on appeal.

statutory penalty is a $250 fine and 30 days in jail, and the maximum statutory penalty is a fine of $1,000 and 90 days in jail.  R.C. 2705.05(A)(3).

{¶ 14} The question at the crux of this appeal is whether the trial court was required to follow the limits set forth in R.C. 2705.05 when punishing Bright or whether it possessed the inherent authority to impose a different sanction, namely, community control sanctions.  After reviewing extensive case law, the answer to this question — to say the least — is complicated.  As one author noted, "[f]ew legal concepts have bedeviled courts, judges, lawyers and legal commentators more than contempt of court."  Martineau, *Contempt of Court: Eliminating the Confusion Between Civil and Criminal Contempt*, 50 U.Cin.L.Rev. 677 (1981).  Another commentator stated, "[t]he law [of contempt of court] is a mess." Dudley, *Getting Beyond the Civil/Criminal Distinction*, 79 Va.L.Rev. 1025 (1993).  We have discovered from our extensive research that these observations are just as relevant today.

### A. Definition and History of Contempt

{¶ 15} The Ohio Supreme Court has described contempt as:

> a despising of the authority, justice or dignity of a court; and one is guilty of such contempt whose conduct is such as tends to bring the administration of the law into disrespect and disregard or otherwise tends to impede, embarrass or obstruct the court in the performance of its functions.

*In re Green*, 172 Ohio St. 269, 273, 175 N.E.2d 59 (1961), *rev'd on other grounds*, *In re Green*, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962).

{¶ 16} Courts have had the inherent authority "since the very beginning of common law * * * to compel obedience of their lawfully issued orders." *Cramer v. Petrie*, 70 Ohio St.3d 131, 133, 637 N.E.2d 882 (1994). "The power to punish for contempt is as old as the law itself and has been exercised so often that it would take a volume to refer to the cases. From the earliest dawn of civilization the power has been conceded to exist." Sir John Fox, *The History of Contempt of Court* (London Professional Books Ltd.), 221-222 (1972). "Indeed, the phrase *'contemptus curiae'* has been a part of English law since the Twelfth Century." *Cramer* at 133, citing Borrie & Lowe, *Law of Contempt* (2d Ed.1983). "Fundamentally, the law of contempt is intended to uphold and ensure the effective administration of justice. Of equal importance is the need to secure the dignity of the court and to affirm the supremacy of law." *Id.*

{¶ 17} More than a century ago, the Ohio Supreme Court explained, "Such [contempt] powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon the legislative will. * * * Without such power no other [power] could be exercised." *Hale v. State*, 55 Ohio St. 210, 213, 45 N.E. 199 (1896). In *State v. Local Union 5760, United Steelworkers of Am.*, 172 Ohio St. 75, 80, 173 N.E.2d 331 (1961), *overruled on other grounds*, *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610 (1980), the Ohio Supreme Court reiterated, "That a court inherently, and quite apart from any statutory authority or express constitutional grant, possesses such contempt power has been the rule from time immemorial."

{¶ 18} Although the contempt authority should be limited to the "'least possible power adequate to the end proposed,'" courts have an absolute duty to safeguard the administration of justice by use of the contempt power where appropriate. *Hicks v. Feiock*, 485 U.S. 624, 637, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), fn. 8, quoting *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). As plainly stated by the Ohio Supreme Court in *Local Union*:

> If courts are to be maintained and if they are to function properly in carrying out their constitutional and statutory duties, the defiance of court authority * * * cannot be tolerated. Courts must vigorously protect the dignity of their judgments, orders, and process. All those who would by misconduct obstruct the administration of justice must be on notice that they do so at their peril.

*Local Union 5760* at 89-90.

## B. Types of Contempt

{¶ 19} Generally, when analyzing whether the procedure used in contempt proceedings met the minimum due process requirements or whether the sanction imposed was proper, reviewing courts must examine the proceedings and sanction to determine if the contempt was direct or indirect contempt, and whether it was civil or criminal. *State v. Kilbane*, 61 Ohio St.2d 201, 203, 400 N.E.2d 386 (1980).

## 1. Criminal Versus Civil Contempt

{¶ 20} Contempt proceedings "are sui generis in the law." *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 201, 299 N.E.2d 686 (1973). "Sui generis, translated, means: of its own kind; peculiar to itself." *State v. Timson*, 38 Ohio St.2d 122, 128-129, 311 N.E.2d 16 (1974). Contempt proceedings "bear some

resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these." *Cincinnati* at 202.

{¶ 21} The Ohio Supreme Court has explained:

> Although there has never been a clear line of demarcation between criminal and civil contempts, it is usually said that offenses against the dignity or process of the court are criminal contempts, whereas violations which are on their surface offenses against the party for whose benefit the order was made are civil contempts.

*Local Union 5760*, 172 Ohio St. at 82, 173 N.E.2d 331, citing *O'Brien v. People, ex rel.*, 216 Ill. 354, 368, 75 N.E. 108 (1905). "The distinction is usually based on the purpose to be served by the sanction." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001), citing Dan D. Dobbs, *Contempt of Court: A Survey*, 56 Cornell L.Rev. 183, 235 (1971). "Thus, in determining whether a contempt is civil or criminal, the pertinent test is 'what does the court primarily seek to accomplish by imposing sentence?'" *Id.* at 555, quoting *Shillitani*, 384 U.S. at 370, 86 S.Ct. 1531, 16 L.Ed.2d 622. "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order." *Id.* "Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court." *Id.*, citing *Denovchek v. Trumbull Cty. Bd. of Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). Any sanction imposed for civil contempt must afford the contemnor the right to purge himself of the contempt. *DeLawder v. Dodson*, 4th Dist. Lawrence No. 02CA27, 2003-Ohio-2092, ¶ 10.

{¶ 22} To determine whether Bright's contempt was civil or criminal, we look to the purpose of the trial court's punishment. *Kilbane*, 61 Ohio St.2d at 205, 400 N.E.2d 386. As this court explained in *Anderson v. Cuyahoga Metro. Hous. Auth. (In re Anderson)*, 2017-Ohio-86, 80 N.E.3d 1208, ¶ 12 (8th Dist.), sanctions for civil contempt are meant to "coerce or remedy the party harmed," while sanctions for criminal contempt are meant to "punish the contemnor" and "to vindicate the court." Reviewing courts must look to the entire record to determine the purpose of the sanction. *Kilbane* at 206.

{¶ 23} The Ohio Supreme Court explained that "[t]he most important consequences arising from this classification of contempts is that many of the significant constitutional safeguards required in criminal trials are also required in criminal contempt proceedings." *Id.* at 205. Specifically, this includes "the right to notice of the charges, the right to defend oneself and be heard, the right to counsel, and the right that there be proof beyond a reasonable doubt to support a conviction." *Internatl. Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). Moreover, a criminal contemnor must be present at the contempt hearing. *Adams v. Epperly*, 27 Ohio App.3d 51, 52-53, 499 N.E.2d 374 (9th Dist.1985).

{¶ 24} In contrast, the standard of proof for civil contempt is clear and convincing evidence. *Carroll v. Detty*, 113 Ohio App.3d 708, 711, 681 N.E.2d 1383 (4th Dist.1996). In a civil contempt, an alleged contemnor is entitled only to those rights afforded in a civil action. *Schrader v. Huff*, 8 Ohio App.3d 111, 112, 456 N.E.2d

587 (9th Dist.1983).  Thus, although a person charged with civil contempt must receive notice and have an opportunity to be heard, the alleged contemnor can be tried and sanctioned in absentia.  *Cleveland v. Bryce Peters Fin. Corp.*, 8th Dist. Cuyahoga Nos. 98006-98024, 98078, 98079, 98163, and 98164, 2013-Ohio-3613, ¶ 36-37.

**2. Direct Versus Indirect Contempt**

{¶ 25} To determine the propriety of the contempt procedure and sanction, reviewing courts must also determine if the contempt was direct or indirect. *Kilbane*, 61 Ohio St.2d at 204, 400 N.E.2d 386.

{¶ 26} The fundamental distinction between direct contempt and indirect contempt lies in the location of the act of contempt — whether it takes place within the presence of the judge, or elsewhere.  "A direct contempt is one committed in the presence of or so near the court as to obstruct the due and orderly administration of justice." *In re Lands*, 146 Ohio St. 589, 595, 67 N.E.2d 433 (1946).  "It is said that direct contempt takes place in the presence of the court, and indirect contempt is all other contempt." *Cincinnati*, 35 Ohio St.2d at 202, 299 N.E.2d 686.  The significance of the location is directly related to the issue whether the judge has personal knowledge of the contumacious act. *Id.*  In Ohio, however, "proximity alone does not determine direct contempt." *Pheils v. Palmer*, 6th Dist. Lucas No. L-98-1092, 1999 Ohio App. LEXIS 1009, 10 (Mar. 19, 1999).  "Direct contempt may be in the actual presence of the courtroom, or in the constructive presence of the court

or the judge." *Id.*, citing *In re Estate of Wright*, 165 Ohio St. 15, 25, 133 N.E.2d 350 (1956).

{¶ 27} In direct contempt proceedings, courts have the inherent power to summarily punish a contemnor. *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870 (1984), syllabus. This is because "[w]hen a judge has viewed and/or heard such misbehavior, he or she is said to have personal knowledge of the contemptible actions." *Warren v. DeMarco*, 11th Dist. Trumbull No. 2003-T-0052, 2004-Ohio-3191, ¶ 14, citing *In re Neff*, 20 Ohio App.2d 213, 222, 254 N.E.2d 25 (5th Dist.1969). To "summarily" punish means "the court is not required to accord the person the usual procedural rights of due process, such as the filing of process or the taking of evidence." *Quirke v. Quirke*, 11th Dist. Ashtabula No. 92-A-1755, 1996 Ohio App. LEXIS 4110, 6-7 (Sept. 20, 1996), citing *Fed. Land Bank Assn. v. Walton*, 99 Ohio App.3d 729, 734, 651 N.E.2d 1048 (3d Dist.1995). In *Neff*, the court explained:

> Where the circumstances have been such that the judge has personal knowledge of the acts of direct contempt already committed, the person charged with contempt by commission of the acts has waived his rights, which he might otherwise have had prior to or upon hearing and presentation of evidence. No hearing is necessary since he has already by his own voluntary acts placed the evidence directly before the court under circumstances which precluded the court from having any opportunity to advise him of any constitutional rights which might otherwise have been available to him. In such cases, he may be summarily found guilty of contempt of court[.]

*Id.* at 226. Due process protections are necessary, however, if "the punishment imposed is of such severity as to classify the contempt as a serious offense rather

than a petty offense." *Id.*, citing *Bloom v. Illinois*, 391 U.S. 194, 201-210, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

{¶ 28} Further, "[a] prevalent misconception exists even now that direct contempt is synonymous with summary (i.e., without due process) contempt." Chinnock and Painter, *The Law of Contempt of Court in Ohio*, 34 U.Tol.L.Rev. 309, 321 (2003). Stated differently, direct contempt does not always justify a summary sanction. *State v. Lowe*, 1st Dist. Hamilton Nos. C-170494, C-170495, C-170498 and C-170505, 2018-Ohio-3916, ¶ 35. "Due process warrants that two circumstances must exist before a court may address a contemptuous act in that manner." *In re Chambers*, 2019-Ohio-3596, 142 N.E.3d 1243, ¶ 26 (1st Dist.). These elements include:

> (1) A contumacious act committed in open court in the judge's presence and immediate view that results in the judge's personal knowledge and makes further evidence unnecessary for a summary finding of contempt ("judge's personal knowledge" element); and, (2) the contumacious act constitutes an imminent threat to the administration of justice that may result in demoralization of the court's authority unless the court imposes a summary contempt sanction ("imminent threat" element).

*Id.*, quoting Chinnock and Painter; *see also State v. Dumas*, 7th Dist. Mahoning No. 10-MA-50, 2011-Ohio-1003, ¶ 45, citing *In re Wingrove*, 4th Dist. Washington No. 02CA4, 2003-Ohio-549, ¶ 30 ("A court may summarily punish a person for direct contempt as long as two conditions are met: (1) the contumacious act must be known personally to the court; and (2) the nature of the contempt must establish an imminent threat to the administration of justice so that immediate punishment is

required to prevent demoralization of the court's authority before the public."); *In re Parker*, 105 Ohio App.3d 31, 35, 663 N.E.2d 671 (4th Dist.1995) ("It is well settled law that actions are not summarily punishable under the law of direct contempt unless they impose an imminent threat to the administration of justice.").

{¶ 29} Certainly, not every act committed "within the presence of the court" constitutes an "imminent threat to the administration of justice" to justify a summary sanction. Indeed, the United States Supreme Court referred to summary contempt without due process protections to be a "narrow category of cases." *In re Oliver*, 333 U.S. 257, 276, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Thus, if there is not an imminent threat to the administration of justice, then the court must proceed with contempt proceedings by providing due process protections to the contemnor. As the Ohio Supreme Court explained, "The invocation of the court's summary power for direct contempt is an awesome power that the court must be cautious in using [that] should be restricted to activity that threatens the integrity or the very functioning of the judicial process." *Cincinnati*, 35 Ohio St.2d at 213, 299 N.E.2d 686; *see also Cleveland v. Heben*, 74 Ohio App.3d 568, 574, 599 N.E.2d 766 (8th Dist.1991), citing *State v. Conliff*, 61 Ohio App.2d 185, 401 N.E.2d 469 (10th Dist.1978) (the offending conduct for summary contempt "must constitute an imminent threat to the administration of justice"); *In re Davis*, 77 Ohio App.3d 257, 602 N.E.2d 270 (2d Dist.1991), quoting Dobbs, *Contempt of Court: A Survey*, 56 Cornell L.Rev. at 229 ("a summary proceeding is not authorized simply because the conduct constitutes direct contempt. Even if the external facts are clear because they

took place in the presence of the judge, the effect of the contumacious conduct must create a 'need for speed' to immediately suppress the court-disrupting misbehavior and restore order to the proceedings.").

### C. Codification of Contempt

{¶ 30} As we discussed, it has long been established that in Ohio that courts have inherent authority to exercise their contempt power. *Hale*, 55 Ohio St. 210, 45 N.E. 1896, at syllabus. The General Assembly first codified this inherent power in 1860. *See* Ohio R.S., Chapter 27, Contempts of Court. In 1884, the General Assembly amended the contempt statutes. *See* Ohio R.S., Chapter 4, Contempts of Court. Notably, today's codification of contempt law in R.C. Chapter 2705 is virtually the same as the 1884 version.

{¶ 31} R.C. 2705.01, titled, "Summary punishment for contempt," states that "[a] court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." Violation of the R.C. 2705.01 "is regarded as 'direct contempt'" and "represents a codification of the law of contempt as it exists at common law." *Local Union 5760*, 172 Ohio St. at 79, 173 N.E.2d 331. The phrase "or so near the court or judge as to obstruct the administration of justice" was based on the phrase "in the presence of the court" adopted by early English case law. Sir John Fox, *History of Contempt of Court*, at 215.

{¶ 32} A violation of R.C. 2705.02 is titled, "Acts in contempt of court," and is generally referred to as indirect contempt. *Local Union 5760* at 79. It provides:

A person guilty of any of the following acts may be punished as for a contempt:

(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer;

(B) Misbehavior of an officer of the court in the performance of official duties, or in official transactions;

(C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required;

(D) The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by the officer;

(E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of the person's recognizance;

(F) A failure to comply with an order issued pursuant to section 3109.19 or 3111.81 of the Revised Code;

(G) A failure to obey a subpoena issued by the department of job and family services or a child support enforcement agency pursuant to section 5101.37 of the Revised Code;

(H) A willful failure to submit to genetic testing, or a willful failure to submit a child to genetic testing, as required by an order for genetic testing issued under section 3111.41 of the Revised Code.

{¶ 33} R.C. 2705.03, states:

In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel. This section does not prevent the court from issuing process to bring the accused into court, or from holding him in custody, pending such proceedings.

{¶ 34} R.C. 2705.05(A) states: "In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine

whether the accused is guilty of the contempt charge." R.C. 2705.05(A) then sets forth statutory sanctions for first, second, and third contempt charges, which we will address in the next subsection of this opinion.

{¶ 35} These statutes are merely cumulative to a court's inherent contempt power, and they do not in any way abridge that inherent power. *Hale*, 55 Ohio St. at 217, 45 N.E. 1896. "A power which the legislature does not give, it cannot take away. If power, distinguished from jurisdiction, exists independently of legislation, it will continue to exist notwithstanding legislation." *Id.* at 215.

## D. Bright's Contempt

{¶ 36} There is no question that Bright was sanctioned for criminal contempt. The trial court imposed a definite sanction without giving Bright the opportunity to "purge" herself of the contempt, and the sanction was plainly intended to punish Bright.

{¶ 37} Whether her contempt was direct or indirect is not as straight-forward. This is because Bright pleaded guilty to one charge of contempt under R.C. 2705.02, which sets forth instances of indirect contempt. Bright's contemptuous conduct, however, took place in the arraignment room in front of the arraignment room judge, which indicates that her contempt was direct.

{¶ 38} In *Local Union 5760*, 172 Ohio St. at 80-81, 173 N.E.2d 331, the Ohio Supreme Court explained:

> If a court has inherent power to punish for contempt summarily, it must by the same token have the power to determine the kind and character of conduct which constitutes such contempt. *State, ex rel.*

*Turner, Atty. Genl., v. Albin*, 118 Ohio St., 527, 161 N. E., 792. Consequently, the fact that Section 2705.02, Revised Code, inferentially classifies an act of resistance to a lawful court process or order as an act of indirect contempt does not limit the power of a court to determine, in its sound discretion, whether such an act constitutes direct or indirect contempt.

{¶ 39} Therefore, just because Bright was charged with contempt under R.C. 2705.02 does not mean that her contempt was indirect. R.C. 2705.02 is not an exhaustive list. *State v. Searles*, 8th Dist. Cuyahoga No. 58087, 1991 Ohio App. LEXIS 1271, 6 (Mar. 28, 1991), citing *Cincinnati*, 35 Ohio St.2d at 207, 299 N.E.2d 686. Moreover, the distinction between direct and indirect is inconsequential in this case because it is only significant when courts are trying to determine whether due process protections were necessary, and if so, did the court provide those protections to the contemnor. In this case, the court provided Bright with due process by not punishing her summarily for direct contempt, giving her notice, ensuring she had counsel, and setting the matter for a hearing.

**E. Inherent Power to Punish Versus Statutory Sanctions**

{¶ 40} We will now address the question of whether a court's inherent contempt powers extend to sanctions. Stated another way, we must determine whether courts are limited by the statutory sanctions set forth in R.C. 2705.05.

{¶ 41} R.C. 2705.05 provides:

(A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:

(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;

(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;

(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both.

{¶ 42} Although the Revised Code sets forth caps on jail time and fines for contempt in R.C. 2705.05, the Ohio Supreme Court held in *Local Union 5760,* 172 Ohio St. 75, 173 N.E.2d 331, at paragraph one of the syllabus, that "[t]he inherent power of a court to punish for contempt of court may not be limited by legislative authority, nor does such power depend upon express constitutional grant." The high court has also explicitly questioned whether the General Assembly could limit a court's ability to punish for contempt. C*incinnati*, 35 Ohio St.2d at 207-208, 299 N.E.2d 686. In *Cincinnati*, two contemnors were found guilty of indirect contempt and fined $1,000 per day for violating a common pleas court order over a period of time, which amounted to a total of $37,000 in fines. They argued that the fines were unlawful because they exceeded the trial court's authority to punish for contempt under R.C. 2705.05 and 2727.12 (procedure for breach of injunction or restraining order). They also argued that it was improper to assess a fine of $1,000 for each contempt since the maximum fine allowed under R.C. 2705.05 was $500. The Supreme Court found their argument to be meritless, explaining:

Assuming, arguendo, that the General Assembly may limit the power of the courts to punish for contempt of their lawful orders, it is apparent

that the fines in the present case are within the limits of R. C. 2705.05. The $500 maximum fine under that statute applies to a single contempt by a single [contemnor]. Here there are two [contemnors], Council 51 and the International; thus, a $1,000 fine against both for each day of the strike would be within the statutory limit. It is, however, highly doubtful that the General Assembly may properly limit the power of a court to punish for contempt. Although it is conceded that the General Assembly may prescribe procedure in indirect contempt cases, the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control.

*Id.* at 207-208.

**{¶ 43}** Many other courts have held that the limits placed on contempt sanctions set forth in R.C. 2705.05 are not mandatory. In *Johnson v. Johnson*, 2d Dist. Greene No. 2019-CA-46, 2020-Ohio-1644, the appellant argued that the trial court erred when it sanctioned him to 120 days in jail contrary to R.C. 2705.05(A). The Second District disagreed, explaining:

Although R.C. 2705.05(A) does prescribe sanctions for indirect contempt violations such as the one at issue here, common pleas courts are not required to follow it. *Copley Twp. Bd. of Trustees v. W.J. Horvath Co.*, 193 Ohio App.3d 286, 2011-Ohio-1214, 951 N.E.2d 1054, ¶ 10 (9th Dist.). "[W]hile a common pleas court has a duty to follow the procedure for a contempt proceeding as outlined by R.C. 2705.05(A), e.g. the court must conduct a hearing, the common pleas court is not limited by the provisions of the statute which refer to the penalties which may be imposed. * * * This is because "'"[t]he general assembly is without authority to abridge the power of a court created by the constitution to punish contempts * * *, such power being inherent and necessary to the exercise of judicial functions * * *."'" *Id.*, quoting *State ex rel. Johnson v. Cty. Court of Perry Cty.*, 25 Ohio St.3d 53, 54, 25 Ohio B. 77, 495 N.E.2d 16 (1986), quoting *Hale*[, 55 Ohio St. 210, 45 N.E. 199], paragraph one of the syllabus. Therefore, "[a]lthough * * * the General Assembly may prescribe procedure in indirect contempt cases, the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control." *Cincinnati*[, 35 Ohio St.2d at 207, 299 N.E.2d 686]. Thus, courts have "wide discretion to determine the punishment for

contempt of [their] own orders." *State ex rel. Anderson v. Indus. Comm.*, 9 Ohio St. 3d 170, 172, 459 N.E.2d 548 (1984).

*Johnson* at ¶ 20.

{¶ 44} This court has likewise explained:

The Ohio Supreme Court has held that the power to punish for contempt is an inherent power of a court, which is not subject to legislative control. *Cincinnati*[,] 35 Ohio St.2d 197, 299 N.E.2d 686 (upholding fines totaling $37,000 imposed upon defendants found to have violated a permanent injunction); *Call v. G.M. Sader Excavating Paving, Inc.* (1980), 68 Ohio App.2d 41, 426 N.E.2d 798 (upholding a fine of $10,000 despite defendants' claims that this fine exceeded R.C. 2705.05); *Olmsted Twp v. Riolo*, 49 Ohio App.3d 114, 550 N.E.2d 507 [(8th Dist.1988)] (upholding fines totaling $26,500 for violating an injunction that prohibited the defendant from maintaining a junk yard on his property). *See, generally,* [*Kilbane,*] 61 Ohio St.2d 201, 400 N.E.2d 386 (dicta reaffirming court's holding in *Cincinnati*[,]; [*Local Union*], 172 Ohio St. 75, 173 N.E.2d 331 (holding that the inherent power of a court to punish for contempt generally may not be limited by legislative authority).

*Cleveland v. Paramount Land Holdings, LLC*, 8th Dist. Cuyahoga Nos. 96180 and 96183, 2011-Ohio-5382, ¶ 21; *see also Goralsky v. Taylor*, 8th Dist. Cuyahoga No. 56534, 1990 Ohio App. LEXIS 1062, 8-9 (Mar. 22, 1990), *rev'd on other grounds*, *Goralsky v. Taylor*, 59 Ohio St.3d 197, 571 N.E.2d 720 (1991) ("while R.C. 2705.05(A) does purport to limit the penalties which may be imposed for contempt of court to a fine of $250 and imprisonment of not more than thirty days for a first offense, it has been held that the power to punish for contempt is an inherent power of a court, which is not subject to legislative control"); *Olmsted Twp.* at 117 (upholding fines totaling $26,500 for violating an injunction that prohibited the defendant from maintaining a junk yard on his property); *McDaniel v. Mt. Sinai Med. Ctr.*, 74 Ohio App.3d 577, 579, 599 N.E.2d 758 (8th Dist.1991) ("while

R.C. 2705.05 sets forth the penalties for contempt of court, a court may, pursuant to its inherent powers, punish a contemptuous refusal to comply with its order, without regard to the statutory penalties."); *Toledo v. Ross*, 6th Dist. Lucas No. L-06-1046, 2007-Ohio-451, ¶ 23 (courts are not bound by statutory penalties when imposing sanctions for contempt).

{¶ 45} Thus, it is well established that trial courts are not bound by the sanction limits set forth in R.C. 2705.05 when imposing a penalty for contempt.

{¶ 46} It is equally clear that while the power to punish for contempt is inherent in the court, the legislature may regulate the procedure that courts must follow in contempt proceedings. *Michaelson v. United States*, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162 (1924). Where "a procedure has been prescribed for the exercise of the power to punish contempts by rule or by statute, it is the duty of the court to follow such procedure." *State ex rel. Johnson*, 25 Ohio St.3d at 54, 495 N.E.2d 16. As we previously stated, the trial court in this case followed the proper procedures and gave Bright due process protections.

### F. Community Control Sanctions

{¶ 47} We now turn to the question at the heart of this appeal: whether a trial court's inherent power to sanction a contemnor includes the power to impose community control sanctions. This appears to be a case of first impression in this state, which we answer in the negative. Despite the fact that courts have the inherent power to punish for contempt and are not limited by the sanctions set forth in

R.C. 2705.05, we find that this inherent power does not include the power to impose community control sanctions for contempt.

{¶ 48} Community control sanctions used to be referred to as probation, which had conditions of probation. "[T]he basic purpose of probation" was to offer "an offender an opportunity to rehabilitate himself [or herself] without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he [or she] abuse this opportunity." *Roberts v. United States*, 320 U.S. 264, 272, 64 S.Ct. 113, 88 L.Ed. 41 (1943); *see also United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("The purpose of probation is to assist in rehabilitating an offender and to protect society from future criminal violations.").

{¶ 49} The Ohio Supreme Court described the purpose of probation as rehabilitating the offender and ensuring his or her good behavior. *State v. Jones*, 49 Ohio St.3d 51, 52, 550 N.E.2d 469 (1990). The *Jones* court explained that a particular condition of probation must meet a three-part test. *Id.* at 52-53. The condition must (1) be reasonably related to rehabilitating the offender, (2) have some relationship to the crime of which the offender was convicted, and (3) relate to the conduct that is "criminal or reasonably related to future criminality and serve the statutory ends of probation." *Id.* at 53.

{¶ 50} The Ohio Supreme Court later explained that its rationale in *Jones* applied equally to community control sanctions. *State v. Talty*, 103 Ohio St.3d 177,

2004-Ohio-4888, 814 N.E.2d 1201, ¶ 16 (because community control is the functional equivalent of probation, the same rationale "applies with equal force to community-control sanctions.") "The community-control statute, despite changing the manner in which probation was administered, did not change its underlying goals of rehabilitation, administering justice, and ensuring good behavior — notwithstanding the lack of explicit language in the community-control statute to that effect." *Id.*

{¶ 51} After reviewing the history and purpose of contempt as well as the purpose of community control sanctions, we hold that community control sanctions are not suitable sanctions for punishing someone for contempt. The primary purpose of criminal contempt is to "punish the contemnor" and "to vindicate the court." *Anderson*, 2017-Ohio-86, 80 N.E.3d 1208, at ¶ 12. "The focus of probation is rehabilitation as opposed to punishment." *State v. Parsons*, 2d Dist. Greene No. 96 CA 20, 1996 Ohio App. LEXIS 4957, 32 (Nov. 15, 1996). We also find it significant that we have been unable to locate a single Ohio case where the court imposed community control sanctions for contempt. Accordingly, we agree with Bright that the trial court in this case erred as a matter of law when it imposed community control sanctions on her contempt, let alone five years of community control sanctions.

{¶ 52} Bright's sole assignment of error is sustained.

## G. Proportionality and Judicial Bias

{¶ 53} Although not raised by Bright, we further note that her jail sanction was more severe than those in similar contempt cases. For example, in *Parma v. Novak* (*In re Huth*), 8th Dist. Cuyahoga No. 108501, 2020-Ohio-3177, an attorney who continuously interrupted and argued with a judge was found in direct contempt of court and punished with a $250 fine. The attorney, who was held to a higher standard of professionalism than defendants in criminal proceedings, was not sanctioned to any jail time at all. *See also Brooklyn v. Frank (In re Contempt of English)*, 8th Dist. Cuyahoga No. 90417, 2008-Ohio-3671, ¶ 6 (attorney found in direct criminal contempt for disrespecting the court was fined $250 and not sanctioned to any jail time); *State v. Campbell*, 8th Dist. Cuyahoga No. 65172, 1993 Ohio App. LEXIS 5336, 3 (Nov. 10, 1993) (attorney who used foul language about the judge within hearing distance of court personnel was convicted of two counts of contempt, fined $1,500, and sanctioned three days in jail); *Bank One Trust Co., N.A. v. Schrerer*, 176 Ohio App.3d 694, 2008-Ohio-2952, 893 N.E.2d 542, ¶ 49 (ten days in jail was disproportionate to attorney's disrespectful comments and refusal to answer court's questions); *Warren*, 11th Dist. Trumbull No. 2003-T-0052, 2004-Ohio-3191, at ¶ 6 (defendant found in direct criminal contempt for screaming in the hallway outside of the courtroom, "bounding" into the courtroom, and interrupting court proceedings, was sanctioned ten days in jail).

{¶ 54} Moreover, although we do not condone Bright's disrespect and use of profanity toward the court, a judge, "notwithstanding the conduct of litigants or

counsel, has an ethical obligation to conduct himself or herself in a courteous and dignified manner[.]" *Kaffeman v. Maclin (In re Cleary)*, 88 Ohio St.3d 1220, 1222-1223, 723 N.E.2d 1106 (2000). Instead of conducting herself in a courteous and dignified manner, the arraignment room judge used sarcastic language, inappropriately suggested Bright was mentally ill, and said that she was "so glad to have company" and hoped to preside over Bright's assault case. If Bright would have randomly drawn the arraignment room judge to preside over her assault case, Bright certainly would have had grounds to request that the judge recuse herself from Bright's case or request the Chief Justice of the Ohio Supreme Court to disqualify and remove the judge from her case. *See* R.C. 2701.031; *Beer v. Griffith*, 54 Ohio St.2d 440, 441, 377 N.E.2d 775 (1978).

{¶ 55} Finally, we note that judges typically give a warning before finding someone in contempt. *See Novak*, 8th Dist. Cuyahoga No. 108501, 2020-Ohio-3177, at ¶ 3 (trial court warned attorney she would be held in contempt if she continued to interrupt); *In re Contempt of English*, 8th Dist. Cuyahoga No. 90417, 2008-Ohio-3671, at ¶ 6 (trial court warned attorney before holding him in contempt); *Highland v. Veneziano*, 8th Dist. Cuyahoga No. 78634, 2001 Ohio App. LEXIS 5197, 3-4 (Nov. 21, 2001) (juvenile court warned attorney she would be held in contempt if she continued to interrupt and instructed the attorney six times to stop raising her voice); *Lowe*, 1st Dist. Hamilton Nos. C-170494, C-170495, C-170498, and C-170505, 2018-Ohio-3916, at ¶ 35 (trial court gave contemnor multiple warnings before finding him in contempt). But here, the arraignment room judge did not

warn Bright that her conduct could lead to contempt charges if she continued to act inappropriately.

{¶ 56} Nonetheless, our decision to vacate Bright's community control sanctions is based on our holding that a trial court's inherent power to sanction for contempt does not include the power to impose community control sanctions.

{¶ 57} Judgment affirmed in part and reversed in part. We vacate Bright's community control sanctions but otherwise affirm her sanctions (jail time that she already served and fine). We remand for the trial court to issue a new judgment entry reflecting that Bright is not subject to community control sanctions.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE


_____
LARRY A. JONES, SR., JUDGE


_____
EILEEN A. GALLAGHER, JUDGE