NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0874n.06

Nos. 10-5595, 10-5597

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARY SEGER, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | |
| | ) | *Dec 21, 2011* |
| v. | ) | |
| | ) | LEONARD GREEN, Clerk |
| KENTUCKY HIGH SCHOOL ATHLETIC | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF KENTUCKY |
| RICHARD EVANS, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KENTUCKY HIGH SCHOOL ATHLETIC | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: GIBBONS and SUTTON, Circuit Judges, and ADAMS, District Judge[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiffs-appellants Richard and Nancy Evans,

as next friends and parents of E.E.E., Mary Seger, as next friend and parent of C.S. and Ce.S., and

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of
Ohio, sitting by designation.

Evan Comer, as next friend and parent of E.C., appeal the district court's order granting the motions to dismiss filed by the defendant-appellee, the Kentucky High School Athletic Association ("KHSAA"). Plaintiffs allege violations of their rights under the First and Fourteenth Amendments through the application of KHSAA Bylaw 13, which places limits on the amount and type of merit-based scholarship assistance a student can receive and still remain eligible to participate in KHSAA-governed high school athletics. The district court dismissed the federal claims with prejudice and remanded the plaintiffs' remaining state law claims to Jefferson Circuit Court. For the reasons that follow, we affirm.

## I.

There are no material factual disputes in this case. The plaintiffs, rather, challenge the application of certain KHSAA rules.

## A.

The Kentucky High School Athletic Association is a voluntary, unincorporated association consisting of over 280 public, private, and parochial schools. The Kentucky Board of Education ("KBE") has designated the KHSAA as its agent to manage interscholastic athletics. The KHSAA's member schools are responsible for the promulgation of the KHSAA's regulations, known as bylaws, governing participation in KHSAA-sanctioned sporting events. The KBE then reviews, approves, and incorporates these bylaws into its own administrative regulations.

The application of KHSAA Bylaw 13 is at issue in this case. Bylaw 13 concerns the eligibility of student athletes at non-public schools who receive certain types and amounts of financial aid. The parties do not dispute the purpose of the bylaw, which is to prevent and deter the

recruitment of student athletes by KHSAA member schools. To prevent this improper recruitment, the KHSAA places certain restrictions on the amount and form of financial aid non-public school students can accept and still remain eligible to play KHSAA-sanctioned sports. Bylaw 13 divides acceptable financial aid into two categories: (1) need-based financial aid and (2) merit-based financial aid. Merit-based financial aid is awarded based on academic or test performance. It must have been made available to the entire student body through a competitive application process and must be made according to published, objective criteria.

In addition to these restrictions, a student accepting merit-based aid must comply with several other conditions found in Bylaw 13 in order to maintain his or her interscholastic athletic eligibility. Two of these restrictions are particularly relevant in this case. First, a student may only accept up to 25% of the cost of tuition in merit-based aid. Second, a student may not accept financial aid from a "funding source that is not under the custody and control of the member school or its governing board." Under this provision, independent groups are not prohibited from making merit-based financial aid awards, but the group must subject its aid to the review and control of the member school or its governing board. Thus, if a student were to accept more than 25% of the cost of tuition in merit-based aid or accept financial aid from a group outside the review and control of the school or governing board, this student would be ineligible to participate in KHSAA-sponsored athletics.

In its definitions section, the bylaw describes several different classifications of schools including: district-operated schools (A1), Roman Catholic schools (J1), other religious schools (M1), and private, non-religiously affiliated schools (R1). The latter three are grouped into a broader category of non-public schools. The bylaw defines a non-public school's "governing board" as "the

entity having oversight over the member school" and states that the governing board for a non-public school "shall be determined by school type." It further defines the governing board of a J1 (Roman Catholic) school as the Catholic archdiocese in which the school is located. These sections, dividing schools between public and non-public schools and defining the "governing board" of non-public member schools, are the only instances in Bylaw 13 that utilize the J1 designation.

B.

Plaintiffs-appellants are the parents of four non-public school students who bring this action on behalf of their children. "E.E.E." is a ninth-grade student at Presentation Academy, a Catholic all-girls school, located in Louisville, Kentucky. She claims that the rule limiting merit-based aid to 25% of tuition prevented her from accepting additional scholarship awards, which she claims she was offered, in order to maintain her KHSAA athletic eligibility. "C.S." is a twelfth-grade student at Presentation Academy, who claims to have turned down a Mason Scholarship merit-based financial aid award to maintain her eligibility to participate in sports. The organization that awarded the Mason Scholarship was found to be outside of the custody and control of the school and its governing board, the archdiocese of Louisville. "Ce.S.," the younger sister of C.S., is in the eighth-grade at Presentation Academy. She was also offered a Mason Scholarship, but she accepted the award. Because she accepted this aid from a group outside the control of the school's governing board, she was declared ineligible to participate in KHSAA-sanctioned sports. Finally, "E.C." is a ninth-grade student at Walden School, a non-public, non-religiously affiliated school located in Louisville, Kentucky. She claims she lost her KHSAA athletic eligibility when she accepted a merit-based financial aid award in excess of 25% of her cost of tuition.

The Evans Plaintiffs, on behalf of E.E.E., and Seger, on behalf of C.S. and Ce.S., originally filed separate complaints in Jefferson Circuit Court. These complaints made essentially the same claims—that Bylaw 13 is unfair, discriminatory, arbitrary, and capricious. Seger later joined the Evans Action, making the same discrimination and arbitrary and capricious claims as were originally made in her separate complaint. Comer, on behalf of E.C., also joined the Evans Action, likewise claiming that the regulation was discriminatory, arbitrary, and capricious.

The KHSAA removed the cases to federal court after it was determined that the plaintiffs-appellants were asserting rights under the United States Constitution. The KHSAA then filed motions to dismiss all claims in both cases pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court considered the motions to dismiss collectively and granted them on April 20, 2010. The court dismissed with prejudice all of the plaintiffs' claims based on federal law and remanded their remaining state law claims to the original state court.

II.

We review the district court's dismissal of a complaint pursuant to Rule 12(b)(6) *de novo*. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). In assessing a motion to dismiss under Rule 12(b)(6), this court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation and citation omitted). Furthermore, this appeal involves constitutional questions, which are questions of law and subject

to *de novo* review. *Johnson v. Econ. Dev. Corp. of Cnty. of Oakland*, 241 F.3d 501, 509 (6th Cir. 2001).

A.

All of the plaintiffs allege that the restrictions found in Bylaw 13 are discriminatory. When assessing whether a law or regulation discriminates in a manner that violates the Fourteenth Amendment, we must first determine the proper degree of scrutiny to apply. Strict scrutiny is applied when a law or regulation discriminates based on a "suspect" classification, such as race, or interferes with the exercise of a "fundamental" right, such as the right to control the upbringing and education of one's children or the freedom of religion. *See, e.g., Regents of Univ. of California v. Bakke*, 438 U.S. 265, 290–91 (1978) (race); *Meyer v. Nebraska*, 262 U.S. 390, 400–401 (1923) (parental control over education of a child); *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531–32 (1993) (free exercise of religion). An intermediate form of scrutiny is applied in cases where the law or regulation discriminates based on a "quasi-suspect" classification, such as gender. *See, e.g., Craig v. Boren*, 429 U.S. 190, 197 (1976). Finally, a law that discriminates on any other basis need only satisfy the rational basis test. *See, e.g., Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) (discrimination based on age).

The Evans plaintiffs and Seger argue that Bylaw 13 is discriminatory on the basis of religion and that strict scrutiny should therefore be applied. Their argument is without merit. Contrary to the plaintiffs' belief, the mere grouping of Catholic schools into a classification labeled as "J1 - Roman Catholic schools" does not, in itself, constitute discrimination on the basis of religion. Bylaw 13 uses the J1 designation only to group Catholic schools into a broader category of non-public

schools and to define the "governing board" of a Catholic school as the archdiocese in which the school is located. In all other respects J1 Catholic schools are treated the same as other non-religious schools. This designation does not amount to facial discrimination.

The bylaw does not discriminate on the basis of religion in its application either. It applies to all member schools, restricting the amount and type of financial aid that any student can receive. The restrictions apply in the same manner to all non-public schools, regardless of whether a school is religiously affiliated. Thus, Bylaw 13 is a neutral law of general applicability. Therefore, it is analyzed under a standard similar to rational basis review. *See Emp't. Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 888–90 (1990); *Hialeah*, 508 U.S. at 531.

Plaintiffs also argue that Bylaw 13 interferes with their "fundamental right" as parents to control the upbringing and education of their children. While the Supreme Court has found this right to be fundamental, *see, e.g., Meyer*, 262 U.S. at 400–401; *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 530–535 (1925), it is not abridged by Bylaw 13. The bylaw only restricts the amount and type of financial aid that a student can receive *and* retain KHSAA athletic eligibility. It does not limit a parent's ability to send his or her child to a non-public school or limit the amount of aid a student can receive when he or she also chooses not to participate in sports. Furthermore, "[i]t is well-established that students do not have a general constitutional right to participate in extracurricular athletics." *Lowery v. Euverard*, 497 F.3d 584, 588 (6th Cir. 2007) (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 180 F.3d 758, 763 (6th Cir. 1999), *rev'd on other grounds*, 531 U.S. 288 (2001)). The fundamental right of parents to control the education of their children does not extend to a right to demand that their children be allowed

to participate without restrictions in extracurricular sports in the educational setting that the parents have freely chosen.

Because the bylaw does not discriminate based on a "suspect" or "quasi-suspect" classification nor interfere with the exercise of any fundamental right, it is subject to review under the rational basis standard.

B.

To pass rational basis review, a classification must be rationally related to furthering a legitimate state interest. *See, e.g., Murgia,* 427 U.S. at 312. Rational basis review is "is the most relaxed and tolerant form of judicial scrutiny. . . ." *Dallas v. Stanglin*, 490 U.S. 19, 26 (1989). A law or regulation subject to rational basis review is accorded a strong presumption of validity. *See FCC v. Beach Commc'ns*, 508 U.S. 307, 314 (1993). Moreover, "those attacking the rationality of the . . . classification have the burden to negative every conceivable basis which might support it." *Id*. at 315 (citations and internal quotation marks omitted). "A State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). Rather, a classification under rational basis review must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc'ns*, 508 U.S. at 313. "A classification having some reasonable basis does not [fail rational basis review] merely because it is not made with mathematical nicety, or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911). Instead, the law must merely "find some footing in the realities of the subject addressed by the legislation" to survive rational basis review. *Heller*, 509 U.S. at 321.

The purpose of Bylaw 13 is to prevent and deter the recruitment of student athletes by preventing KHSAA member schools from "paying" student athletes to play at that school. The plaintiffs do not challenge the legitimacy of the KHSAA's interest in preventing improper athletic recruitment but instead argue that the bylaw's provisions are not rationally related to furthering this objective.

C.S. and Ce.S. challenge the Bylaw 13 provision that states that a student will be ineligible to participate in school athletics if he or she accepts financial aid from a source not under the custody and control of the member school or its governing board. This control provision has a rational connection to the purpose of avoiding the use of financial aid as an improper athletic recruiting tool. The provision helps deter third-party funding sources from assisting schools in participating in improper athletic recruitment. While the organization that provides the Mason Scholarship may not have made its decisions based on any consideration of recipient athletic ability, this is not necessarily the case for every potential third-party funding source. Moreover, the control provision works in concert with the other restrictions on financial aid and makes the other provisions easier to administer. The provision makes schools more invested in and accountable for enforcing the other bylaw provisions. It helps schools better monitor and prevent students from accidentally running afoul of the restrictions on merit-based aid and losing their athletic eligibility. It also potentially deters violations of the recruitment prohibition by placing a school's reputation at stake—at least to an extent greater than if third-party funding sources operated completely independently of school oversight—since the school is more immediately connected to any recruiting violations.

Accordingly, this provision has a rational connection to the purpose of deterring the use of financial aid as an improper athletic recruitment tool.

Plaintiffs E.E.E. and E.C. challenge the Bylaw 13 provision that provides that a student will be ineligible to participate in KSHAA-sponsored athletics if he or she receives merit aid in excess of 25% of tuition. Plaintiffs argue that they personally were not recruited for their athletic abilities. Indeed, the provision is overinclusive in that it restricts the amount of merit-based aid any student can receive even if there is no suspicion whatsoever that a particular award is being used for improper athletic recruitment purposes. Plaintiffs also argue that the bylaw's restrictions are underinclusive because a student may receive an award of up to 100% of tuition without any further KHSAA review if he or she qualifies for need-based aid. While accurate, the plaintiffs' arguments are unavailing. "Even if the classification involved . . . is to some extent both underinclusive and overinclusive, and hence the line drawn [is] imperfect, it is nevertheless the rule that . . . perfection is by no means required." *Vance v. Bradley*, 440 U.S. 93, 108 (1979) (quoting *Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 385 (1960) (quotation marks omitted)). *See also New York City Transit Auth. v. Beazer*, 440 U.S. 568, 592 (1979) (finding that an overly-broad law, although "probably unwise," was not unconstitutional under rational basis review); *Breck v. Michigan*, 203 F.3d 392, 396 (6th Cir. 2000) ("Rational basis scrutiny . . . tolerates some imprecision in classifying otherwise similarly situated people where a state has determined that some distinction is warranted.").

Here, the KHSAA has enacted a broad rule to limit improper athletic recruiting carried out through the use of pretextual "merit-based" academic scholarships. The 25% cap on merit-based aid

may not be a perfect rule, and there might indeed be better methods of preventing the harm of improper recruitment, but a perfect, well-tailored rule is not required. Instead, Plaintiffs bear the burden of establishing that this rule is in no way rationally related to the government's stated legitimate interest, and they have not done so.

The provision limiting merit-based awards to 25% of tuition does have a rational connection to the legitimate state interest as it also works in concert with the other provisions in Bylaw 13 to reduce improper athletic recruitment. For example, if a student desires to maintain eligibility, the bylaw requires that merit-based aid be given solely on "academic/test performance" with selection of recipients based on published, *objective* criteria. The 25% cap provision reinforces the goal behind this restriction. Reinforcement is needed because even "objective" academic indicators, such as a student's grade point average, have built-in subjective components that can be manipulated by parties seeking to stay within the letter of the regulation while evading its spirit. A school attempting to recruit a student-athlete (or retain a student-athlete who is currently enrolled) could guide the student toward easier classes and teachers who grade more leniently or provide additional academic help unavailable to non-recruits. These tactics could potentially boost the student's G.P.A. and qualify the student for a "merit-based" scholarship. Even an indicator as objective as a standardized test performance can be manipulated through means such as the provision of additional tutoring or test preparation classes to targeted student-athlete recruits.

Instead of attempting to regulate all these potential loopholes one-by-one, the KHSAA has apparently decided to deter such manipulation by simply capping the amount of merit-based aid a

student can receive and still be eligible to play school sports. The 25% cap on merit-aid provision

is, therefore, rationally related to the KHSAA's interest in preventing improper athletic recruitment.

## III.

For the foregoing reasons, we affirm the decision of the district court. Finally, we would note

that our decision addresses only the plaintiffs' federal constitutional claims and does not affect any

claims they might pursue under state law.