[Cite as *State v. Wisener*, 2022-Ohio-4557.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

THOMAS WISENER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0025**

---

Criminal Appeal from the
Youngstown Municipal Court
Mahoning County, Ohio
Case No. 22CRB00163Y

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. John B. Juhasz*, 7081 West Boulevard, Suite No 4, Youngstown, Ohio 44512 for Plaintiff-Appellee.

*Atty. Daniel J. Leffler,* Ohio Patrolmen's Benevolent Assoc., 10147 Royalton Road, Suite J, North Royalton, Ohio 44133 for Defendant-Appellant.

Dated:  December 15, 2022

**Robb, J.**

{¶1} Appellant Thomas Wisener appeals the decision of the Youngstown Municipal Court finding him guilty of contempt for refusing to wear a mask in the courthouse in violation of a court order. In the first assignment of error, Appellant contends his contempt should have been treated as civil contempt with an opportunity to purge rather than criminal contempt with a definite jail term. In the second assignment of error, he alleges the courthouse mask order unconstitutionally interfered with his religious beliefs because it was not the least restrictive means of furthering the admittedly compelling state interest of protecting against Covid-19 transmission during a pandemic and allowing the court to remain operational. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} On February 23, 2022, a visiting municipal court judge signed a judgment entitled, "In re Contempt of Court Order of 8/23/21 (Covid-19) Thomas Wisener (YPD Officer)." Citing the court's Covid-19 Operations Order, the judgment memorialized that the court advised Appellant he was in violation of the mask order and informed him of the potential penalties for first time contempt. The entry, filed on February 28, 2022, set a hearing date of March 18, 2022.

{¶3} A second entry was filed the same day, wherein Youngstown Municipal Court Judge Carla Baldwin instructed the clerk to create a case number for Appellant's contempt case, which was set for hearing on March 18. This entry noted the charge was "Contempt of Court 2705.02," and a summons was issued to Appellant for the contempt hearing.

{¶4} At the hearing before Judge Baldwin, defense counsel acknowledged Appellant's violation of the court's mask order and said Appellant understood his obligation to comply with court orders, including as an officer of the court. (Tr. 2). Counsel argued Appellant violated the order because he believed it offended his religious beliefs. (Tr. 2-3).

{¶5} Appellant's pastor testified Appellant came to his church, Sovereign Grace Chapel, during the pandemic because Appellant's former church required masks. The

pastor generally opined Appellant had "a sincerely held religious conviction that he believed he would be violating the Ninth Commandment and some other principled convictions from the scripture" and could not "with a clear conscience be wearing a mask." (Tr. 4). The content of the cited commandment was not mentioned, and it was not explained how it related to masking during a pandemic.[1]

**{¶6}** Appellant's explanation was as follows: "scripture tells me to love the Lord my God with all my heart, with all my soul, with all my mind. If I violated a deeply held conviction, if I do not uphold a conviction that God gave me, then I cannot love the Lord my God with all my heart, mind, and soul." (Tr. 5).

**{¶7}** The judge noted Appellant never raised his religious objection to the court in any formal fashion despite being warned multiple times by court staff. Still, the judge noted she found Appellant's "beliefs are sincere" and said she did not dispute the statements provided by Appellant and his pastor. The judge explained the mask order was not a suggestion and was issued without exceptions to protect the public and court staff so the court could ensure the effective administration of justice through the pandemic. It was also noted Appellant had a rare benefit for a contempt defendant: the opinion of the law department.

**{¶8}** The court concluded Appellant admitted he did not wear a mask and he repeatedly and blatantly violated the authority and dignity of the court. It was specified that Appellant was found guilty beyond a reasonable doubt of contempt of court by violating the court's mask order. Appellant was sentenced to 10 days in jail and fined $250. (Tr. 6-7); (3/18/22 J.E.).

**{¶9}** Appellant filed a timely notice of appeal. His jail term was stayed pending appeal (under principles related to the automatic misdemeanor stay provision). In the praecipe, Appellant asked for a complete transcript; however, he then made comments under the section for a partial transcript and only listed the March 18, 2022 hearing. Still, he failed to order a transcript from a court reporter. His brief cited an audio recording from the March 18, 2022 hearing, acknowledging he did not have a transcription made.

---

[1] In some denominations, the Ninth Commandment proscribes bearing false witness against one's neighbor; in others, this proscription is contained in the Eighth Commandment, and the Ninth proscribes coveting the house or the wife of one's neighbor. *See, e.g., Summum v. City of Ogden*, 152 F.Supp.2d 1286, 1296 (D.Utah 2001); *Ring v. Grand Forks Pub. School Dist.*, 483 F.Supp. 272, 273 (D.N.D.1980).

Case No. 22 MA 0025

{¶10} Notably, "The appellant shall order the transcript in writing and shall file a copy of the transcript order with the clerk of the trial court." App.R. 9(B)(3),(6) (and the form of the transcript is prescribed). *See also* 7th Dist.Loc.R. 9C. The state objected but then (with this court's permission) supplemented the record with the March 18, 2022 written transcript, which the state ordered even though the obligation rested on the Appellant here.

{¶11} In addition to referring to the March 18, 2022 hearing, Appellant's brief refers to facts allegedly occurring on February 23, 2022. He therein admits: walking into the courthouse without a mask (notwithstanding the security guard at the front desk inquiring about his lack of a mask); waiting outside of a courtroom and rejecting another security guard's request for him to don a mask, even after she said he would be reported to the police department's internal affairs department; entering a courtroom while maskless to await the case for which he had been subpoenaed to testify; and walking around the courthouse maskless after the case was continued (while attempting to obtain a signature on the subpoena for work purposes).

{¶12} These facts are not contained in the judgment entry signed that day or mentioned at the March 18, 2022 hearing. Appellant did not obtain a transcript from February 23, 2022 or utilize an alternative under division (C) or (D) of App.R. 9.

## ASSIGNMENT OF ERROR ONE: CRIMINAL CONTEMPT

{¶13} Appellant sets forth two assignments of error, the first of which alleges:

"THE TRIAL COURT ERRED IN FINDING DEFENDANT/APPELLANT IN CRIMINAL CONTEMPT OF COURT AND SENTENCING DEFENDANT/APPELLANT TO A DEFINITE TERM IN JAIL."

{¶14} Appellant contends the court abused its discretion by sentencing him to a definite jail term as if the proceedings involved criminal contempt. He notes criminal contempt could have been punished summarily, but here, charges were filed and process was issued for a later hearing. He characterizes the contempt as indirect because the mask order was issued in order to protect others around the entire courthouse and concludes the case should have been treated as a civil contempt with an opportunity to purge. He then claims purging would have occurred automatically by operation of law

Case No. 22 MA 0025

because the mask order was terminated on February 28, 2022, five days after his violation but before the March 19, 2022 contempt hearing.[2]

**{¶15}** A contempt decision rests within the trial court's "sound discretion." *State v. Kilbane*, 61 Ohio St.2d 201, 204, 400 N.E.2d 386 (1980). An abuse of discretion consists of more than an error of judgment but encompasses an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 91.

**{¶16}** "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. This is the codification of the court's pre-existing power to punish direct contemnors summarily. *Kilbane*, 61 Ohio St.2d at 204.

**{¶17}** "A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer * * *." R.C. 2705.02. "In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel." R.C. 2705.03. "At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge." R.C. 2705.05(A). A case is not automatically labeled indirect contempt merely because there was disobedience to an established court order, which is mentioned in R.C. 2705.02. *Kilbane*, 61 Ohio St.2d at 204.

**{¶18}** Statutorily, a first offense of contempt carries a maximum fine of $250 and a definite term of imprisonment of not more than 30 days in jail. R.C. 2705.05(A)(1).[3]

---

[2] We note Appellant's brief fails to mention the mask order was merely modified on that date to waive the masking requirement for vaccinated individuals. *See In re: Covid 19 Operations Order*, 20 CRS OPEN, 20 CRB OPEN, 20 TRD OPEN, 20 TRC OPEN (2/28/22). His vaccination status was not discussed on the record.

[3] Due to the inherent power of the court in contempt cases, the Supreme Court has questioned whether the legislature can limit the remedy even for indirect contempt where the procedure can be regulated. *City of Cincinnati v. Cincinnati Dist. Council 51,* 35 Ohio St.2d 197, 207, 299 N.E.2d 686 (1973), citing *Local Union 5760*, 172 Ohio St. 75 at paragraph two of the syllabus ("In imposing punishment for acts of direct contempt, courts are not limited by legislation").

"When the contempt consists of the omission to do an act which the accused yet can perform, he may be imprisoned until he performs it." R.C. 2705.06. "When a person is committed to jail for contempt, the court or judge who made the order may discharge him from imprisonment when it appears that the public interest will not suffer thereby." R.C. 2705.08.

{¶19} The state characterizes the contempt as direct, noting Appellant acknowledges a direct contempt includes misconduct committed in the presence of the judge or so near the courtroom that it obstructs the court's administration of justice. As the court pointed out, the continued operation of the court depended on protecting the staff and the public with the mask order.

{¶20} As the statute makes clear: "An act need not be in the immediate presence of the court in order to constitute direct contempt, if it tends to obstruct justice or interfere with actions of the court in the courtroom itself." *In re Wright's Estate*, 165 Ohio St. 15, 26, 133 N.E.2d 350 (1956). Moreover, "contempt of court is directed to the court itself rather than toward an individual judge thereof." *Id.* at 25. "A court is constructively present wherever any of its court officers are engaged in the execution of the business of the court according to law." *State v. Local Union 5760, United Steelworkers of America*, 172 Ohio St. 75, 173 N.E.2d 331 (1961), paragraph two of the syllabus. *See also State ex rel. Seventh Urban, Inc. v. McFaul*, 5 Ohio St.3d 120, 449 N.E.2d 445 (1983) (an attorney's assault on the opposing party in the courtroom on court business in the presence of court personnel before the judges entered the courtroom was direct contempt in the constructive presence of the court).

{¶21} Here, the first judge told Appellant he was in violation of the mask order, and set the case for further hearing rather than summarily punishing him for his contempt of court by disobeying a court order. "[J]ust because [a contemnor] was charged with contempt under R.C. 2705.02 does not mean that her contempt was indirect." *Cleveland v. Bright,* 2020-Ohio-5180, 162 N.E.3d 153, ¶ 39 (8th Dist.). Even if contempt is committed in or near the court's presence, a court may schedule a hearing if the threat to justice is no longer imminent, as courts are cautious in utilizing a summary procedure. *Id.* at ¶ 28-29. *See also Local Union 5760*, 172 Ohio St. at 82 (noting it is a better practice to provide notice of a hearing if the judge was not actually physically present during the

contempt). After Appellant acknowledged his refusal to wear a mask in violation of the court order at a contempt hearing, a second judge then reiterated the finding of the violation, noting he repeatedly and blatantly violated the court order.

**{¶22}** Courts distinguish between direct and indirect contempt in order to determine whether the contempt can be punished summarily (and potentially to determine whether the court will apply the statutory limitations on the sanction). *Kilbane*, 61 Ohio St.2d at 204 (where the contemnor was summarily held in contempt). *See also In re Contempt of Christman*, 2022-Ohio-1937, 190 N.E.3d 1225, ¶ 14 (8th Dist.) (direct contempt by pulling mask down during court proceedings could be punished summarily). In *Bright*, the Eighth District pointed out:

> the distinction between direct and indirect is inconsequential in this case because it is only significant when courts are trying to determine whether due process protections were necessary, and if so, did the court provide those protections to the contemnor. In this case, the court provided Bright with due process by not punishing her summarily for direct contempt, giving her notice, ensuring she had counsel, and setting the matter for a hearing.

*Bright*, 2020-Ohio-5180.

**{¶23}** Likewise, Appellant does not take issue with the procedure or claim he was punished without advance notice of a hearing or beyond the statutory limits. The imposed sanction was within the statutory limits, and as Appellant acknowledges, he was not punished summarily. The court found a violation while Appellant was before the court, memorialized this in the initial entry, and set a further hearing. At the scheduled hearing, it was conceded Appellant violated the mask order. It seems Appellant is suggesting indirect contempt is more likely to be classified as civil contempt; however, even an indirect contempt can be dealt with as a criminal contempt.

**{¶24}** Contempt proceedings "are sui generis in the law" bearing "some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these." *Cincinnati Dist. Council 51*, 35 Ohio St.2d at 201-202. "Sui generis, translated, means: of its own kind; peculiar to itself." *State v. Timson*, 38 Ohio St.2d 122, 128-129, 311 N.E.2d 16 (1974). In distinguishing the type of proceeding as criminal or civil, *the court's intent governs*: "Sentences for criminal contempt are punitive

in nature and are designed to vindicate the authority of the court. * * * On the other hand, the purpose of sanctions in a case of civil contempt is to coerce the contemnor in order to obtain compliance with the lawful orders of the court." *Kilbane*, 61 Ohio St.2d at 204-205. Therefore, a court's intent in a particular case can vary from another court's intent in a different case with similar misconduct.

**{¶25}** Courts distinguish between criminal and civil contempt to determine the available sentence and the applicability of certain constitutional rights. *Id.* at 205. For instance, a criminal contemnor has the right to be found guilty beyond a reasonable doubt. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Appellant does not claim inadequate rights were afforded, and the court found him guilty beyond a reasonable doubt. Rather, he claims the contempt was civil (as he did not interfere with a court action but violated an order meant to protect others) so he was entitled to an opportunity to purge instead of a definite sentence.

**{¶26}** In general, "offenses against the dignity or process of the court are criminal contempts, whereas violations which are on their surface offenses against the party for whose benefit the order was made are civil contempts." *Kilbane*, 61 Ohio St.2d at 204. Accordingly, "if the contempt is civil the sanction is primarily coercive in nature and must allow for purging. If the contempt is criminal the sentence must be imposed primarily to vindicate the authority of the court and must be determinate." *Id.* at 206-207 (but conditional contempt is not necessarily civil where coercion is a secondary purpose).

**{¶27}** As the state argues, the court's intent was clearly to punish Appellant for past criminal contempt. If the court was concerned with coercion at the time of the scheduled hearing, then it could have issued a conditional sentence. Instead, the court issued a determinate, unconditional sentence in order to vindicate the court's authority to enforce its mask order issued in response to the Covid-19 pandemic. The order violated here was not issued for an opposing party, and the court was not concerned with assisting an opposing party in a court case. Rather, the court was focused on punishing Appellant for repeatedly violating the mask mandate and preserving the dignity of the court which suffered by the acknowledged disobedience to the court order applicable to the courthouse and the courtroom. Accordingly, the imposition of a determinate sentence for

this criminal contempt was not an abuse of discretion, and this assignment of error is overruled.

**{¶28}** Lastly, we note Appellant's reply brief, while discussing the definite nature of the sentence, could be read as adding a general argument that the jail term of ten days was unreasonable and not commensurate with the misconduct. An argument on the length of the jail term was not alternatively raised in the initial brief, where Appellant challenged the definite nature of the sentence (arguing for a conditional sentence subject to purging). To the extent additional issues are mentioned, we must point out "a reply brief is not the place for making new arguments." *State v. Donlow*, 7th Dist. Mahoning No. 21 MA 0046, 2022-Ohio-1518, ¶ 34, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 18.

**{¶29}** Nevertheless, the imposition of a contempt sanction is within the trial's court sound discretion. *Kilbane*, 61 Ohio St.2d at 207 (the sentence should be reasonably commensurate with the gravity of the offense when imposing a sanction inherent with the court's direct contempt power, which extends beyond the statutory limitations). Although the sentence may seem harsh, the ten-day jail sentence was well below the statutory maximum. Merely because an appellate judge would have rendered a lesser sentence in the same situation does not mean a trial judge abused her discretion. When applying an abuse of discretion standard of review, we are not permitted to substitute our judgment for that of the trial court. *State v. Herring*, 94 Ohio St.3d 246, 255, 762 N.E.2d 940 (2002). Appellant's general statements do not demonstrate an abuse of discretion in the length of the jail term. We also note it is possible the trial court could be persuaded to apply R.C. 2705.08: "When a person is committed to jail for contempt, the court or judge who made the order may discharge him from imprisonment when it appears that the public interest will not suffer thereby."

<u>ASSIGNMENT OF ERROR TWO: RELIGION</u>

**{¶30}** Appellant's second assignment of error contends:

"THE YOUNGSTOWN MUNICIPAL COURT MASK MANDATE ORDER INTERFERED WITH DEFENDANT/APPELLANT'S RELIGIOUS BELIEF AND WAS NOT THE LEAST RESTRICTIVE MEANS TO ACCOMPLISH THE GOVERNMENTAL INTEREST."

<u>Case No. 22 MA 0025</u>

**{¶31}** Appellant's brief cites the free exercise of religion provisions in the First Amendment to the United States Constitution and Article I, Section 7 of the Ohio Constitution.[4]  In discussing his religious beliefs on appeal, Appellant relies on additional bible verses or explanations that were not mentioned below.  He adds the explanation, which was not specified below, that he cannot love God if he shows fear of the virus and that he is to emulate God by not lying but would be lying by complying with the mask mandate due to his belief that a mask would not protect others.  He concludes that if God allowed him to hold a genuine conviction (on masks), then he cannot love God with all his heart, mind, and soul if he fails to follow this conviction.

**{¶32}** In the case cited by Appellant, the Ohio Supreme Court explained that under the federal standard, "the relevant issues are whether the regulation at issue is religion-neutral and whether it is generally applicable. If those elements are fulfilled, then the regulation does not violate the Free Exercise Clause."  *Humphrey v. Lane*, 89 Ohio St.3d 62, 67, 728 N.E.2d 1039 (2000), citing *Oregon Dept. of Human Resources, Emp. Div. v. Smith*, 494 U.S. 872, 885, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (rejecting the compelling state interest test for these cases, even if the law had the incidental effect of burdening a particular religious practice).  Only "[a] law failing to satisfy the religion neutral and generally applicable requirements must be justified by a compelling governmental interest and narrowly tailored to advance that interest."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (a law is not religiously neutral if it is facially discriminatory or the object of the law is to infringe upon or restrict practices because of religious motivation).[5]

---

[4] Without further briefing the topic, Appellant also cites the Fourteenth Amendment while referring to a right of privacy or personal autonomy.  However, he did not mention this below or outline the applicable standard under this assignment of error, which focuses on religion.  The state assumes the Fourteenth Amendment is cited because it is employed when the First Amendment's free exercise clause is applied to the states. *Cantwell v. Connecticut*, 310 U.S. 296, 303-304, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).  In any event, Appellant's argument presents the application of the Ohio Constitution's free exercise test as the dispositive issue on appeal.

[5] In response to the *Smith* case, Congress passed the Religious Freedom Restoration Act to restore the stricter test if the government action substantially burdens religious exercise.  42 U.S.C § 2000bb-1(a).  However, it was ruled the act cannot be applied to state regulations. *City of Boerne v. Flores*, 521 U.S. 507, 532-536, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).  *See also Holt v. Hobbs*, 574 U.S. 352, 356, 135 S.Ct. 853, 859, 190 L.Ed.2d 747 (2015) (discussing the subsequent federal law applicable to the states in some contexts, Religious Land Use and Institutionalized Persons Act of 2000).  Appellant does not cite a federal act.

**{¶33}** Although *Smith* did not explicitly mention the remaining part of the test to be applied (after concluding strict scrutiny did not apply to the religion-neutral and generally applicable law), courts apply the rational basis test to a federal free exercise claim where a contested regulation is neutral and generally applicable. *See, e.g., Seger v. Kentucky High Sch. Athletic Assn.*, 453 Fed.Appx. 630, 634 (6th Cir.2011); *Keeton v. Anderson-Wiley*, 664 F.3d 865, 880 (11th Cir.2011). Under a rational basis review, a law will be upheld if it is reasonably related to furthering a legitimate state interest. *See generally Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 85, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). *See also F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (when the rational basis test applies, there is a strong presumption of constitutionality and the challenger has the burden of disputing every reasonably conceivable basis).

**{¶34}** Appellant concedes the municipal court's mask order is neutral on its face, and there is no allegation of a religion-related motivation behind the order. Therefore, there is no dispute the municipal court's mask order is religion-neutral. Furthermore, the order is generally applicable. Finally, Appellant does not claim the order was not rationally related to a legitimate government interest. Regardless, we apply strict scrutiny next in analyzing Appellant's free exercise claim under Ohio's Constitution (which is the focus of the argument presented under this assignment of error). In fact, while applying the strict scrutiny test under Ohio law, Appellant acknowledges the mask order was supported by a compelling state interest (which is much higher than a legitimate interest).

**{¶35}** Before reviewing Appellant's challenge to the Ohio Constitution's free exercise provisions, the state contends Appellant waived his constitutional challenge by failing to challenge the mask mandate before the final contempt hearing. The state urges there was no obvious error by the trial court or extraordinary circumstances to prompt this court to exercise our discretion to recognize plain error. *See State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62 (plain error is discretionary with appellate court in extraordinary circumstances if there was obvious and outcome-determinative error).

**{¶36}** It is claimed that in order to test the municipal court order, Appellant should have done so prior to showing up without a mask. The state notes Appellant could have

filed a declaratory judgment action to lodge his religious objection to the mask order. Yet, the fact that a person can file an action does not mean he must file it in order to assert a religious violation when a court believes a person is in contempt.

{¶37} The state also points out Appellant could have asserted his constitutional argument in a motion to quash which sought permission to appear by video in response to the subpoena summoning him to testify in the municipal court. Alternatively, it is claimed Appellant should have raised the constitutional argument when the court first found he was in violation of the mask mandate on February 23, 2022 or in a motion to dismiss before the March 18, 2022 hearing. At the latter hearing, the trial court noted Appellant did not raise the religious objection earlier.

{¶38} Appellant replies by citing the following general premise: "the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277, 279 (1986). He points out he raised his religious objection to the trial court and claims he did so at the first opportunity, which he says was at the March 18, 2022 hearing after being formally summoned to appear for contempt.

{¶39} Yet, this did not provide the state/city an opportunity to prepare to defend the mask order, as there was no advance knowledge the order would be challenged on a religious basis. We also note Appellant referred to his religion at the hearing but did not mention the federal or state constitution or specifically claim the order was unconstitutionally applied to him. *See McFarland v. W. Congregation of Jehovah's Witnesses, Lorain, Ohio, Inc.*, 2016-Ohio-5462, 60 N.E.3d 39, ¶ 60 (9th Dist.) (refusing to review a broader argument under the Ohio Constitution where the appellant only raised First Amendment free exercise below). The lack of specificity in raising the topic of religion could reasonably lead the other participants to believe the topic was raised for mitigation purposes, which was discussed at the hearing.

{¶40} Regardless, the state argues Appellant failed to make a prima facie case when he finally raised his religious objection to the mask order. It is urged that his objection, as vaguely expressed to the trial court, appeared to be a mere personal belief. It is also claimed Appellant failed to demonstrate the mask mandate for courthouse visits substantially burdened a central tenet of his religion. *See, e.g., Hernandez v.*

*Commissioner of Internal Revenue*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) (in previously applying strict scrutiny, it was observed that the free exercise test initially asks whether the government "placed a substantial burden on the observation of a central religious belief or practice"). Appellant replies by stating religion can be personal and the objection need not correspond to a central tenet of a widely-publicized religion.

{¶41} The Ohio Constitution's free exercise clause contains an added prohibition on the "interference with the rights of conscience" and has been interpreted as being broader than the United States Supreme Court's most recent interpretation of the federal constitution's general protection of the free exercise of religion. *Humphrey*, 89 Ohio St.3d at 67 (noting the federal standard was previously stricter and correlated to Ohio's standard). "Ohio's ban on any interference makes even those tangential effects potentially unconstitutional" as the "protection applies to direct and indirect encroachments upon religious freedom." *Id.* at 67, 68 (even where the contested government action is religiously neutral and evenly applied).

{¶42} Still, the constitutional reference to conscience must be connected to religious exercise. *See id.* In other words, the *Humphrey* decision distinguishing between the Ohio and federal free exercise clauses was "not a recognition of a general right of conscience." *Luken v. Brigano*, 154 Ohio App.3d 531, 2003-Ohio-5116, 797 N.E.2d 1047, ¶ 15-21 (12th Dist.) ("the Ohio Supreme Court has not recognized a general right of conscience separate from the protection afforded to religious rights").

{¶43} "To state a prima facie free exercise claim [in Ohio], the plaintiff must show that his religious beliefs are truly held and that the governmental enactment has a coercive affect against him in the practice of his religion." *Id.* at 68. In *Humphrey*, a prison guard violated the dress code by refusing to cut his hair because it was contrary to his particular Native American religion, and the Supreme Court factually noted the trial court believed the prison guard's religious beliefs were sincerely held and the state did not dispute a "central tenet" of the guard's religion was for a man to refrain from cutting his hair unless in mourning. *Id.*

{¶44} The asserted "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Church of the Lukumi Babalu Aye*, 508 U.S. at 531. Even though an inquiry on the truth of the specified

religious tenet is to be avoided, the objector must show the belief is sincerely held *and* the challenged regulation coerces him in his religious practice. *Humphrey*, 89 Ohio St.3d at 68. *See also State v. Whitaker*, 6th Dist. Fulton No. F-06-011, 2007-Ohio-881, ¶ 20 (otherwise, the free exercise clause could be used to avoid all undesired legal obligations).

**{¶45}** The belief infringed must be "more than a personal or philosophical belief." *United States v. Seeger*, 380 U.S. 163, 166, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). "[T]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215-216, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (in previously applying strict scrutiny, corresponding to Ohio's test).

**{¶46}** If the plaintiff makes a prima facie case, then the burden shifts to the state to prove the regulation furthers a compelling state interest and is the least restrictive means available of furthering that state interest. *Humphrey*, 89 Ohio St.3d at 69. Although the burden shifts to the state, when the court is considering a less restrictive alternative, it is generally said "the burden is on the Government to prove that the *proposed* alternatives will not be as effective as the challenged statute." (Emphasis added.) *Ashcroft v. ACLU*, 542 U.S. 656, 665, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004).

**{¶47}** In *Humphrey*, the Ohio Supreme Court found the state had a compelling interest in enforcing policies on uniforms and grooming in order to maintain control and stability in a prison by having an organized and unified guard force. *Humphrey*, 89 Ohio St.3d at 69. However, the Court concluded the appellate court should not have reversed the trial court's factual determination that securing hair under the hat was a less restrictive alternative to achieve the compelling interest. *Id.* at 70-71 (deferring to the fact-finder). This alternative was expressly in the regulation for women prison guards. The Court pointed out this may not be an alternative in another case if there is evidence the hair could not be secured in a uniform and dignified manner. *Id.* at 70.

**{¶48}** Here, the trial court generally found Appellant's "beliefs are sincere" and said the court did not "dispute your statement or that of your pastor * * *." (Tr. 7). However, the court was merely noting it took no issue with the testimony given and found Appellant had sincere beliefs. This was not a factual finding that Appellant held a

sincerely *religious* belief *connected* to masking so that the order had a *coercive affect* against him in the practice of his religion. *See Humphrey*, 89 Ohio St.3d at 68. *See also Preterm Cleveland v. Voinovich*, 89 Ohio App.3d 684, 697, 627 N.E.2d 570 (1993) (the Ohio Constitution does not afford a right of conscience unconnected to religious freedom). The statements of Appellant, his counsel, and his pastor were conclusory and do not appear to demonstrate a prima facie case under *Humphrey*.

**{¶49}** Having a sincerely held religious belief about loving God combined with a desire to refrain from performing an act contrary to one's personal opinion does not demonstrate the expressed religious belief had a relation to masks in order to demonstrate the mask mandate "has a coercive affect against him in the practice of his religion." *See Humphrey*, 89 Ohio St.3d at 68. The disclosures *in the record* indicate Appellant is personally against wearing a mask for unrevealed reasons. He did not show his desire to refrain from wearing a mask was "more than a personal or philosophical belief." *See Seeger*, 380 U.S. at 166. Appellant did not disclose to the trial court at the hearing the connection between his religious belief or practice and the mask mandate. It was not explained how the courthouse mask order "infringes upon [Appellant's] constitutional right to the free exercise of religion." *See State v. Schmidt*, 29 Ohio St.3d 32, 34, 505 N.E.2d 627, 629 (1987) (finding the disclosed religious belief may have been sincere, but the objector failed to demonstrate the contested regulation infringes upon the religious belief).

**{¶50}** This is not to say an objector's presentation in another case with a mask mandate may not satisfy the requirements for a prima facie case. However, in this case, the presentation was vague, and the analysis on appeal relies on an overbroad appellate attempt to impliedly connect an unexplained personal opinion to a general religious principle so the personal opinion is itself transformed into a religious tenant. *See Lippert*, 2010-Ohio-5809 at ¶ 12 (finding there was no evidence describing how the contested policy is coercive as to tenet of the religious practice).

**{¶51}** Notably, new facts and arguments cannot be presented on appeal that were not presented below with new quotations and citations to scripture and new interpretations of how masking could be viewed under each principle (e.g., the brief now claims Appellant believes displaying a mask as if it has protective value contradicts the

Case No. 22 MA 0025

commandment against false testimony and showing fear of a virus contradicts a scripture verse that God gave "a spirit not of fear"). The proper place for such claims was below. *See, e.g., State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.").

{¶52} Under Appellant's argument as presented below, any personal annoyance or opinion would become a religious belief negatively affected by a regulation if a person's religion requires him to love or be true to God and he is subject to a regulation he does not personally believe should have been issued. Appellant failed to make a prima facie case that a sincerely held religious belief was connected to masking so as to show the mask mandate had a coercive affect against Appellant in the practice of his religion.

{¶53} We note if Appellant had made a prima facie case, then the next inquiry would be whether the mask order furthered a compelling state interest. *Humphrey*, 89 Ohio St.3d at 69. The state points out the municipal court's mask mandate followed the guidance of the Ohio Supreme Court. *See* Ohio Supreme Court "Responsible RestartOhio" (5/7/2020) (Courts must establish policies that * * * Require face coverings for employees and the public); Ohio Supreme Court New Mask Mandate (8/4/21) (reimplemented due to higher county transmission rates).

{¶54} Appellant concedes the municipal court had a compelling state interest to protect against Covid-19 transmission in the courthouse. *See, e.g., Mussivand v. David*, 45 Ohio St.3d 314, 319, 544 N.E.2d 265 (1989) (strong public policy in protecting the public from communicable diseases). Another interest underlying this protection interest is the compelling state interest in keeping the court operational through the pandemic.

{¶55} Where an objector makes a prima facie case and there was a compelling state interest, the final inquiry would involve evaluating whether the mask mandate was the least restrictive means to accomplish the compelling interest of protecting against the spread of Covid-19 among those who enter the courthouse. *See Humphrey*, 89 Ohio St.3d at 69. Appellant claims the municipal court mask mandate was not the least restrictive means of protecting the staff and the public from a communicable disease and suggests a less restrictive means would have been to allow a person to appear in court

by video, noting many courts used video appearances to ensure continued court operations when the pandemic started in 2020.

**{¶56}** We note Appellant's violation occurred in 2022, and Appellant did not propose the video alternative below, before or after violating the court's order. *See Ashcroft*, 542 U.S. at 665, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004) ("the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute"). *See also Humphrey*, 89 Ohio St.3d at 69 (where the state failed to show the hair-under-the-hat alternative, which was proposed by the objector and contained in its policy for women, was not the least restrictive means). Where his reasons for non-compliance were not provided before the hearing and were not particularized at the hearing, alternatives could not have been formulated as options acceptable to the objector. Moreover, video testimony is an alternative to one's appearance in the courthouse, not an alternative to masking once one is in the courthouse. The record does not indicate the stage or type of case in which Appellant, a city police officer, was being subpoenaed to testify. The rights of a criminal defendant may have been part of the equation. Under the facts of this case, the trial court could reasonably conclude the mask order was narrowly tailored to serve the compelling interest of protecting entrants to the courthouse from Covid-19 and of keeping the court open during a pandemic.

**{¶57}** In any event, as concluded supra, Appellant failed to make a prima face case under *Humphrey* by connecting a sincere religious belief to the mask order to show it had a coercive affect in the practice of his religion. This assignment of error is overruled.

**{¶58}** For the foregoing reasons, the trial court's judgment is affirmed.


Donofrio, P J., concurs.

D'Apolito, J., concurs.

Case No. 22 MA 0025

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Youngstown Municipal Court of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**