The **STATE** of Ohio, Appellee,

v.

**DAILY**, Appellant.

[Cite as *State v. Daily*, 184 Ohio App.3d 241, 2009-Ohio-4582.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23069.

Decided Sept. 4, 2009.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Michele D. Phipps, Assistant Prosecuting Attorney, for appellee.

Dennis A. Lieberman, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Jerry Daily, was indicted on two counts of pandering obscenity involving a minor. R.C. 2907.321(A)(5). Defendant pleaded no contest to one of the counts in exchange for the state's dismissal of the other. The state recommended imposition of community-control sanctions and that defendant's sentence run concurrently with any sentence imposed on defendant by a court in Belmont County. The trial court accepted defendant's no-contest plea and found him guilty. Prior to sentencing, defendant filed a Crim.R. 32.1 motion to withdraw his no-contest plea. The trial court denied that motion following a hearing. The trial court sentenced defendant to five years of community-control sanctions and classified him as a Tier II sex offender.

{¶ 2} Defendant timely appealed to this court from his conviction and sentence.

## SECOND ASSIGNMENT OF ERROR

{¶ 3} "The trial court erred by removing defendant's retained counsel and appointed counsel to him, in violation of his Sixth Amendment right to counsel."

{¶ 4} On June 25, 2008, defendant's retained counsel, Sam Latham, filed a motion requesting a continuance of a pretrial conference scheduled for June 26, 2008, claiming that he needed to undergo extensive medical testing. The trial court granted that motion and continued the conference to July 10, 2008.

{¶ 5} On July 10, 2008, Latham did not appear for the scheduled pretrial conference and again filed a motion requesting a continuance of the final pretrial conference as well as the trial itself because of his continuing health problems. Latham indicated that he had been ill for the past two weeks and was still ill. He also indicated that his medication was "not working as hoped for."

{¶ 6} The trial court did not address Latham's claims. Instead, on the same day the motion was filed, the trial court, sua sponte and without any request from either defendant or Latham, and without any notice or opportunity to either to be heard, removed Latham as counsel for defendant and appointed Brad Baldwin to represent defendant, selecting Baldwin from a list of attorneys available for appointment to represent indigent criminal defendants. By subsequent entry filed on August 14, 2008, the trial court explained that it had removed Latham as counsel for defendant because his personal health issues interfered with his ability to fulfill his obligations and court appearances in defendant's case.

{¶ 7} Defendant appeared for the July 10, 2008 pretrial conference and was told by the court that his trial would be on Tuesday of the following week. When defendant subsequently appeared for trial, Baldwin met him and undertook his representation, advising defendant to accept the state's plea offer. At the hearing on his motion to withdraw his plea, defendant testified that Latham, to whom defendant had paid a $5,000 retainer, had from the beginning of his representation told defendant that he had a good case and that they were going to take the case to trial. Defendant also testified that after Baldwin took over defendant's representation, he continued to consult with Latham, who told him he was being railroaded and that if defendant did not accept the state's plea offer he would go to jail. Defendant relied on Latham's advice and accepted the state's plea offer.

{¶ 8} Procedural due process requires, at a minimum, notice and an opportunity to be heard. *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484; *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 668 N.E.2d 457.

{¶ 9} Although the court could find from his conduct and the pleadings that Latham filed that he was experiencing health problems that interfered with his ability to represent defendant and to meet scheduled court appearances in this case, on this record the court did not know what Latham's medical problems were, the extent to which those problems would interfere with Latham's ability to represent defendant, or how long those medical problems might persist. More

important, if Latham was, in fact, unable to continue his retained representation of defendant, the record does not demonstrate whether defendant wished to retain other counsel.

{¶ 10} An element of the Sixth Amendment right to counsel is the right of a defendant who does not require appointed counsel to select an attorney of his own choosing. *United States v. Gonzalez–Lopez* (2006), 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409. The Sixth Amendment right is violated when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he receives. Id. A trial court's erroneous deprivation of a criminal defendant's Sixth Amendment right to counsel of his own choosing entitles defendant to a reversal of his conviction because the error is "structural." Id.

{¶ 11} Defendant's second assignment of error is sustained.

## FIRST ASSIGNMENT OF ERROR

{¶ 12} "The trial court erred by overruling defendant's motion to withdraw his plea prior to sentencing because he presented a reasonable basis for the request."

## THIRD ASSIGNMENT OF ERROR

{¶ 13} "The trial court erred in overruling defendant's motion to exclude him from the registration requirements of O.R.C. 2950 et seq. in violation of his constitutional rights against ex post facto penalties."

{¶ 14} Our disposition of defendant's second assignment of error is dispositive of this appeal and renders these assignments of error moot. Accordingly, we need not address them. App.R. 12(A)(1)(c).

{¶ 15} Having sustained defendant's second assignment of error, we will reverse his conviction and sentence and remand the matter to the trial court for further proceedings consistent with this opinion.

Judgment accordingly.

DONOVAN, P.J. and FROELICH, J., concur.

FROELICH, Judge, concurring.

{¶ 16} I write separately to emphasize that the reversal is required due to the state of the record.

{¶ 17} *Gonzalez–Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409, held that a court's erroneous decision to remove retained counsel in a criminal case is not subject to a harmless-error analysis; that is, the defendant need not object,

allege that his subsequently appointed counsel was ineffective, or show that he would not have pleaded but for the removal of his retained attorney. Similarly, it cannot be claimed that he waived any error by entering a plea, especially a no-contest plea. To further obfuscate this very discrete area of law, it is not at all clear whether the removal of a retained counsel in a criminal case is even a final, appealable order. See, for example, *State v. Chambliss*, Cuyahoga App. No. 91272, 2008-Ohio-5285, 2008 WL 4531965, appeal accepted for review, 121 Ohio St.3d 1407, 2009-Ohio-805, 902 N.E.2d 32.

{¶ 18} A court is not required to hold a formal hearing in all cases where retained counsel is removed. *State ex rel. Rose v. Garfield Hts. Mun. Court* (1979), 57 Ohio St.2d 42, 11 O.O.3d 156, 385 N.E.2d 1314. Trial courts have the inherent power to manage their own dockets. *State ex rel. Charvat v. Frye*, 114 Ohio St.3d 76, 2007-Ohio-2882, 868 N.E.2d 270, at ¶ 23; see *State ex rel. Buck v. McCabe* (1942), 140 Ohio St. 535, 536, 24 O.O. 552, 45 N.E.2d 763 (granting a defendant in a personal-injury action, who had enlisted in the Canadian armed forces, a continuance "for the duration of the war * * * or [until] a reasonable time after the death of said defendant while on such service"). Nothing in *Gonzalez–Lopez* "casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice * * * we have recognized a trial court's wide latitude in balancing the right to counsel of choice * * * against the demands of its calendar." *Perkins v. Jackson* (May 14, 2009), S.D. Ohio No. C–3:08–CV–277, 2009 WL 1362626, quoting *Gonzalez–Lopez*, 548 U.S. at 141, 126 S.Ct. 2557, 165 L.Ed.2d 409, citing *Morris v. Slappy* (1983), 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610.

{¶ 19} But in *Rose*, 57 Ohio St.2d 42, 11 O.O.3d 156, 385 N.E.2d 1314, the record reflects that defendant's trial was delayed from April until at least mid-October as a result of retained counsel's repeated failure to appear at scheduled proceedings, including two times when the prosecutor and jury were present and ready for trial. The first time, the court issued an order the same day removing the retained attorney as counsel; after subsequent discussions, counsel was reinstated and the court issued an order stating that prejudice would inure to the parties as the result of further delays. Despite this, he again failed to appear at the next trial date, and the court removed him as attorney of record.

{¶ 20} The Supreme Court held the "record at bar contains stipulated and admitted evidence [that the attorney] was unable to attend defendant's trial due to scheduled appearances in other courts * * * [and the court] had ample evidence before it to conclude that [the attorney's] caseload was causing 'undue delay' in the defendant's cause and to enter the removal order." *Rose*, 57 Ohio St.2d at 46, 11 O.O.3d 156, 385 N.E.2d 1314. Sup.R. 41(C) and Loc.R. 1.31, IV, of the Court of Common Pleas of Montgomery County, General Division, by

analogy, allow the administrative judge to remove a retained attorney. See, e.g., *Rose* at 45, 11 O.O.3d 156, 385 N.E.2d 1314. There is no indication in Daily's case that retained counsel's motions were filed with the intent to unnecessarily drag out or unduly delay the proceedings or were even something over which he had any control (as opposed to *Rose,* whose trial calendar was apparently the reason for his actions and inactions).

{¶ 21} In Daily's case, the record on appeal reflects the following:

| | |
|---|---|
| April 20, 2007 | Indicted |
| September 5, 2007 | Order setting status for September 11, and schedule for September 20 |
| October 20, 2007 | Order to appear for trial on March 3, 2008 |
| February 15, 2008 | Waiver of time by defendant |
| February 15, 2008 | Order setting final pretrial for May 1 and trial for May 5, 2008 |
| April 28, 2008 | Defendant's motion for continuance based on need to obtain computer discovery from BCI |
| May 2, 2008 | Order setting final pretrial for June 26 and trial for July 14 |
| June 25 | Defendant's motion for continuance of pretrial because of medical testing |
| June 25 | Entry granting continuance of pretrial until July 10 |
| July 10 | Defendant's motion for continuance of final pretrial and trial due to illness |
| July 10 | Order appointing new attorney |
| July 11 | Retained attorney files witness designations |
| July 14 | Order setting motion to suppress August 7, with notice to appointed attorney |
| July 22 | Motion to suppress filed by appointed attorney |
| August 14 | Order removing retained attorney "on grounds that [the attorney's] reported health issues prevented him from fulfilling this court's obligations, including but not limited to, fulfilling the court's scheduling orders." |
| August 28 | Plea of no contest |
| September 11 | Motion to withdraw plea |
| October 22 | Decision denying motion to withdraw |
| November 4 | Termination entry for October 30 sentencing |
| November 7 | Notice of appeal |

The record reflects only two motions for continuance of the trial—one for needed discovery and one for apparently serious, personal medical problems.

{¶ 22} The record does not reflect any inquiry of Daily or his retained counsel as to when the retained counsel would be available or any indication of prejudice to the state or the defendant by an extension of time. Such inquiries, at a minimum, would ensure that the defendant's Sixth Amendments rights, as discussed in *Gonzalez–Lopez,* were not violated. See, e.g., Poulin, Strengthening the Criminal Defendant's Right to Counsel (2006), 28 Cardozo L.Rev. 1213, 1265–1266 (concerning the importance of a hearing before counsel is removed and of the defendant's presence at such hearing).

{¶ 23} We are extremely sensitive to the "public's interest in the prompt and efficient dispatch of justice," *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21

O.O.3d 41, 423 N.E.2d 1078, as well as that of the defendant, the prosecution, and the complainant. Moreover, we share, both at the trial and the appellate levels, the individual and systemic frustrations caused by the tensions among these sometimes competing interests.

{¶ 24} The question of "counsel of choice" most frequently arises when a defendant, at the last moment, wants to fire his retained or appointed attorney and obtain another attorney or when a defendant wants to keep his current attorney despite apparent conflicts of interest that that attorney has. However, such possible "game playing" or challenges to the integrity of the justice system are not present here.

{¶ 25} Based on the state of the record, I concur that the trial court erred by removing defendant's retained counsel and appointing a new counsel for him, in violation of his Sixth and Fourteenth Amendment rights.