[Cite as *In re Contempt of Donegan*, 2024-Ohio-840.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CONTEMPT OF               :
ROBERT O. DONEGAN

                                   :

                             Nos.  112779 and 112797

[Appeal by Attorney Robert O. Donegan  :
and Jacob Hernandez in matter styled:
State of Ohio v. Jacob Hernandez]

                                   :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** March 7, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-674608-A

---

### *Appearances:*

Koblentz & Penvose, LLC, Nicholas E. Froning, and Richard S. Koblentz, *for appellant* Robert O. Donegan.

Russell S. Bensing, *for appellant* Jacob Hernandez.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory J. Ochocki, Assistant Prosecuting Attorney, *for appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} In this consolidated case, attorney Robert O. Donegan ("Donegan") appeals the trial court's decision finding him in contempt of court. Jacob Hernandez

("Hernandez") appeals the trial court's decision removing his retained counsel, Donegan. For the reasons that follow, we reverse both decisions of the trial court.

**Factual and Procedural History**

{¶ 2} On October 4, 2022, a grand jury indicted Hernandez for one count of rape, a felony of the first degree. Donegan filed a notice of appearance as attorney for Hernandez on October 18, 2022. The case was scheduled for multiple pretrials and continued due to ongoing discovery. On March 28, 2023, the case was set for trial on April 19, 2023, but was then canceled and rescheduled for May 30, 2023. On March 31, 2023, the parties filed a joint motion for continuance, which the trial court denied. On April 4, 2023, the trial court canceled the May 30, 2023 trial date and rescheduled the trial for the original date, April 19, 2023. On April 18 and 19, 2023, the state filed supplementary discovery responses.

{¶ 3} On April 19, 2023, the parties appeared in court for a pretrial. At the time, Donegan informed the court, and the state confirmed, that he received the DNA test results and a copy of the phone dump from his client's phone the day before trial. Additionally, that morning, the state notified Donegan that in exchange for a plea of guilty they would amend the charge to one count of sexual battery, a felony of the third degree. When asked, Donegan indicated that he had not discussed the offer with Hernandez because he wanted to review the newly acquired evidence first. The court then inquired whether Donegan had ever handled a rape case or a first-degree felony case. Donegan informed the court that he had not done so. The trial was continued to May 22, 2023.

{¶ 4} The trial commenced on May 22, 2023, at 1:30 p.m. Trial court's May 2, 2023 Journal Entry. After discussing some preliminary matters, jury selection began. During the course of jury selection, the trial court suggested to the jury that they bring their lunches to court on May 23, 2023. Tr. 91, 113-114. The court also suggested the jurors could eat at home or eat in the car on the way to court. Tr. 113-114. Thereafter, the state completed questioning the jury, and the trial court adjourned for the day. The court instructed the jurors to return to court the next day by 12:45 p.m. The trial court did not separately notify the attorneys of a time for arrival.

{¶ 5} On May 23, 2023, the trial court went on the record at approximately 1:12 p.m. At that time, Donegan was not present in court; however, Hernandez and the prosecutor were. Hernandez told the court he had texted Donegan about his whereabouts, and Donegan responded that he was on his way and should be in the courtroom shortly. At 1:30 p.m., the court was on the record in another case when Donegan entered the courtroom. The trial court asked the other parties to step aside in order to address Donegan directly. The court noted that Donegan was half an hour late. Donegan apologized and informed the court that he thought the start time would be 1:30 p.m., due to the drug court docket.

{¶ 6} The trial court then began to go over some history of the case and questioned Donegan. The court noted a prior court date where Donegan had a cousin call the court to request a continuance. Donegan acknowledged that his cousin did call and requested a continuance on his behalf.

{¶ 7} The court asked, and Donegan confirmed, that at a previous pretrial, he had not immediately communicated the plea offer to his client. The court then asked if Donegan knew what time the court asked the jury to return. Donegan confirmed that the jury was to return at 12:45 p.m. Donegan explained that he assumed they were on the same schedule as the previous day. After this exchange, the court found:

> Trial Court: Mr. Hernandez [sic], I find you to be in direct contempt of this court for your failure to appear for trial on the second day.
>
> Trial Court: I'm going to declare a mistrial, as extreme misgivings based upon your behavior today and on your behavior up to this point on this case, that you are able to adequately represent Mr. Hernandez.
>
> Trial Court: I will allow you to purge that finding of criminal contempt, direct contempt, with you fully refunding your client's retainer, by paying all the court costs on this case up to this point, including the jury's appearance fees, and going down to the court's lab on the first floor across the street and giving them a urine sample at this point.
>
> Trial Court: Do you understand me?
>
> Donegan: Yes, Your Honor.
>
> Trial Court: Okay. Mr. Hernandez, I'm going to appoint Walt Edwards to represent you. We will get a trial date for you in a little bit after Mr. Edwards has a chance to get up to speed on this.
>
> Trial Court: Counselor, is there anything else?
>
> State: No, Your Honor.
>
> Trial Court: Good luck, Mr. Donegan. You've spent too much money on your legal education to throw it away at this point.

{¶ 8} The trial court subsequently filed a journal entry as follows:

> On the second day of trial, counsel for the defendant failed to appear in a timely manner. On the first day of trial the jury was instructed to return at 12:45 p.m., so that trial could begin at approximately 1:00

p.m., after the court had finished its morning Drug Court Docket. Robert Donegan did not appear until 1:30 p.m. Mr. Donegan did not call the court to indicate he was going to be late. Additionally, Mr. Donegan failed to inform his client that he would be late. His client was here prior to 1:00 and had to text Mr. Donegan as to his whereabouts. The court finds Mr. Donegan in contempt. The court [is] aware through prior on the record conversations that Mr. Donegan has not ever handled a rape case, nor a first-degree felony prior to being retained by the defendant, had concerns about the attorney's competence to handle this weighty case. This court orders a mistrial and removes Mr. Donegan from representing the defendant due to his failure to demonstrate the competence necessary to represent a defendant charged with a first-degree felony. The contempt may be purged with proof of a full refund of the defendant's retainer, the payment of all of the court costs incurred by the defendant up to May 23, 2023, and a self-report by Mr. Donegan to the court's lab to supply a sample for testing.

{¶ 9} On May 25, 2023, and May 31, 2023, respectively, Donegan and Hernandez appealed the trial court's May 23, 2023 order and now raise the following assignments of error for our review.

### Donegan's Assignment of Error No. 1

The trial court, abusing its discretion, erred in law and sufficiency of the evidence in finding appellant in direct criminal contempt of court.

### Donegan's Assignment of Error No. 2

Appellant was not afforded due process of law.

### Hernandez's Assignment of Error

The trial court erred in removing Defendant's retained counsel.

## Law and Analysis

{¶ 10} For ease of analysis, we will consider Donegan's first and second assignments of error together. In Donegan's first assignment of error, he challenges

whether his actions constituted direct contempt and whether there was sufficient evidence to support an immediate sanction. In the second assignment, Donegan argues that his conduct, at most, was indirect contempt, and therefore, the court deprived him of the required procedural protections. Given the foregoing, a brief examination of the law of contempt is warranted.

{¶ 11} Contempt proceedings serve the purpose of securing the dignity of the courts and ensuring the uninterrupted and unimpeded administration of justice. *T.R.H. v. A.D.H.*, 8th Dist. Cuyahoga No. 110213, 2021-Ohio-3036, ¶ 8, citing *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph two of the syllabus. We review a court's finding of contempt under the abuse-of-discretion standard as contempt directly addresses the "'authority and proper functioning of the court.'" *Id.*, quoting *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988). However, the trial court does not have discretion to make a finding of contempt where there is insufficient evidence. *See Doe v. Univ. Hosps. Health Sys.*, 2023-Ohio-2120, 218 N.E.3d 1082, ¶ 17 (11th Dist.), fn. 1. (noting that while an appellate court reviews the ultimate decision on contempt for an abuse of discretion, a trial court does not have discretion to impose sanctions for criminal contempt unless the burden of proof is met, i.e., proof beyond a reasonable doubt in a criminal contempt case).

{¶ 12} Courts have the inherent power to issue contempt, i.e., that power does "'not depend upon express constitutional grant, nor in any sense upon the legislative will.'" *Cleveland v. Bright*, 2020-Ohio-5180, 162 N.E.3d 153, ¶ 16 (8th

Dist.), quoting *Hale v. State*, 55 Ohio St. 210, 213, 45 N.E. 199 (1896). It is the duty of the court to "safeguard the administration of justice by use of the contempt power where appropriate"; however, the court's use of this authority should be limited to the power necessary to secure the proposed end. *Id.*, citing *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

## Types of Contempt

{¶ 13} Donegan argues that the court's finding of contempt was not supported by sufficient evidence. Part of his argument is that he does not believe that he was subject to direct criminal contempt based on his alleged conduct. This is relevant because the type of due process owed and the burden of proof depends on the type of contempt found.

{¶ 14} When analyzing a contempt proceeding, we must examine the conduct to determine if it constitutes direct or indirect contempt. We must also look at the court's sanction for the conduct to determine whether the court acted within its civil or criminal contempt powers. *In re Mallory-Nichols*, 8th Dist. Cuyahoga No. 112746, 2023-Ohio-3982, ¶ 13, citing *State v. Kilbane*, 61 Ohio St.2d 201, 203, 400 N.E.2d 386 (1980).

{¶ 15} Contempt may be criminal or civil. Although there is not a "clear line of demarcation" between the two, the Ohio Supreme Court has described criminal contempt as "offenses against the dignity or process of the court," and civil contempt as "violations, which are on their surface offenses against the party for whose benefit the order was made." *State v. United Steelworkers of Am.*, 172 Ohio St. 75, 173

N.E.2d 331 (1961), *overruled on other grounds*, *Brown v. Executive* 200*, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610 (1980).

{¶ 16} A sentence for criminal contempt is punitive in nature and designed to vindicate the authority of the court. *Id.* at 82-83, citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). A punishment in criminal contempt is "usually characterized by an unconditional prison sentence or fine." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988). Civil sanctions, in contrast, "are designed for remedial or coercive purposes and are often employed to compel obedience to a court order." *In* re *Mallory-Nichols*, 8th Dist. Cuyahoga No. 112746, 2023-Ohio-3982, ¶ 16, citing *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001).

{¶ 17} If contempt is classified as criminal, the constitutional safeguards that accompany a criminal trial are required for a criminal contempt. *Id.*, citing *Kilbane,* at 205, citing Dobbs, *Contempt of Court*: *A Survey*, 56 Cornell L.Rev. 183 (1971) at pages 241-242. A contemnor is therefore entitled to "'notice of the charges, the right to defend oneself and be heard, the right to counsel, and the right that there be proof beyond a reasonable doubt" of the charges.'" *Id.*, quoting *Internatl. Union v. Bagwell*, 512 U.S. 821, 826, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

{¶ 18} A civil contempt requires proof by clear and convincing evidence and the contemnor is entitled to the same rights afforded during a civil action; also the contemnor must be given the opportunity to purge himself of the contempt sanction. *Id.*, citing *Bright*, 2020-Ohio-5180 at ¶ 24.

{¶ 19} In addition to civil and criminal contempt, contempt may be direct or indirect. "The fundamental distinction between direct contempt and indirect contempt lies in the location of the act of contempt — whether it takes place within the presence of the judge, or elsewhere." *Bright* at ¶ 26. Direct contempt is therefore conduct that is "committed in the presence of or so near the court as to obstruct the due and orderly administration of justice." *In re Lands*, 146 Ohio St. 589, 595, 67 N.E.2d 433 (1946). Furthermore, in this jurisdiction direct contempt includes conduct that is "in the constructive presence of the court or the judge." *Bright* at ¶ 26, citing *Pheils v. Palmer*, 6th Dist. Lucas Nos. L-98-1053 and L-08-1333, 2009-Ohio-6342. Indirect contempt is said to be all other contempt. *Bright* at ¶ 26, citing *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 202, 299 N.E.2d 686 (1973).

{¶ 20} In certain circumstances, a trial court can find and punish direct contempt summarily. This is allowed when

(1) [a] contumacious act committed in open court in the judge's presence and immediate view that results in the judge's personal knowledge and makes further evidence unnecessary for a summary finding of contempt ("judge's personal knowledge" element); and,

(2) the contumacious act constitutes an imminent threat to the administration of justice that may result in demoralization of the court's authority unless the court imposes a summary contempt sanction ("imminent threat" element).

*In re Chambers*, 2019-Ohio-3596, 142 N.E.3d 1243, ¶ 26 (1st Dist.), quoting Chinnock and Painter, *The Law of Contempt of Court in Ohio*, 34 U.Tol.L.Rev. 309, 321 (2003).

{¶ 21} In this instance, the trial court, speaking through its journal entry, found contempt solely based on Donegan arriving late to the second day of trial. However, reviewing the transcript and the court's docket, the trial court did not advise the parties to arrive at a particular time on the second day of trial. The record reflects a court order for the first day of trial setting the start time at 1:30 p.m. Consequently, it was not unreasonable, given the lack of a specific order, for Donegan to arrive the same time as was ordered the previous day, i.e., 1:30 p.m. While the court ordered the jury to arrive at 12:45 p.m., the time the court wished the attorneys to appear was left open.

{¶ 22} Additionally, the majority of the courts have found that an attorney's late arrival or failure to appear is an indirect contempt of court for which a summary punishment is inappropriate. *Cleveland v. Ramsey*, 56 Ohio App.3d 108, 109, 564 N.E.2d 1089 (8th Dist.1988). *See also Weiland v. Indus. Comm. of Ohio*, 166 Ohio St. 62, 66, 139 N.E.2d 36 (1956) (when an attorney arrives late his conduct is both direct and indirect, i.e., it occurs both in front of the court and outside of the court's presence, which requires the court to give the attorney an opportunity to explain his actions). *Basore v. Basore*, 5th Dist. Ashland No. 01-COA-01410, 2001-Ohio-7054 ("[C]ourts have consistently held that arriving late to a hearing or not appearing at all constitutes an indirect contempt of court.").

{¶ 23} Additionally, this court has found that when an attorney fails to timely appear, raising an allegation of indirect contempt of court, the procedural protections established in R.C. 2705.03 apply. *Tucker v. Cleveland Bd. of Edn.*, 8th

Dist. Cuyahoga No. 42028, 1980 Ohio App. LEXIS 13095 (Dec. 11, 1980). In that situation,

> a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel. This section does not prevent the court from issuing process to bring the accused into court, or from holding him in custody, pending such proceedings.

R.C. 2705.03

{¶ 24} It is undisputed that the trial court did not follow this procedure.

{¶ 25} Accordingly, Donegan's first and second assignments of error are sustained.

{¶ 26} Turning to Hernandez's assignment of error, he challenges the trial court's decision to remove his retained counsel from the case because he "failed to demonstrate the competence necessary to represent the defendant."

{¶ 27} A criminal defendant is guaranteed the right to counsel for his defense. Sixth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution. *State v. Rivera*, 9th Dist. Lorain Nos. 16CA011057, 16CA011059, 16CA011060, 16CA011061, 16CA011063, 16CA011073, and 16CA011075, 2017-Ohio-8514, ¶ 6. "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). It is structural error when a court wrongfully denies a defendant the counsel of his choice; thus the defendant is not required to show further prejudice. *State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 8. A

structural error is a constitutional error that "def[ies] analysis by 'harmless error' standards because [it] affect[s] the framework in which the trial proceeds, rather than just being error in the trial process itself." *Gonzales-Lopez* at 148. Furthermore, "[d]eprivation of the right [to counsel] is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.* A defendant's "Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced." *Id.* (Emphasis sic).

{¶ 28} Additionally, the defendant is entitled to procedural due process, i.e., "at minimum, notice and an opportunity to be heard." *State v. Daily*, 184 Ohio App.3d 241, 2009-Ohio-4582, 920 N.E.2d 411, ¶ 8 (2d Dist.), citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *State v. Hochhausler*, 76 Ohio St.3d 455, 668 N.E.2d 457 (1996).

{¶ 29} In the instant case, after Donegan arrived to court, the trial court began questioning Donegan about his lateness and his conduct at earlier pretrials. The court then summarily found Donegan in contempt, declared a mistrial and removed Donegan from the case. The trial court failed to apprise Hernandez and Donegan that it was considering these actions. Furthermore, the trial court did not ask any questions of Hernandez or give him the option of retaining new counsel. The trial court's stated reasons for removing Donegan were not supported by the record. A cousin requesting a continuance on Donegan's behalf was unorthodox, but not grounds for removal. We have already addressed the claims of lateness.

Donegan's inexperience with first-degree felonies, by itself, does not render him incapable of representing Hernandez in this case. Finally, with respect to Donegan's failure to apprise his client of a plea offer, the record reflects that Donegan had received a significant amount of discovery, near or at the same time that he received the offer. Donegan's decision to review the evidence before discussing the state's offer with his client was reasonable given the circumstances. Furthermore, nothing in the record supports a finding that Hernandez was prejudiced by Donegan's actions.

{¶ 30} Based on the foregoing, Hernandez's assignment of error is sustained.

{¶ 31} Judgment is reversed.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., CONCURS AND CONCURS WITH THE SEPARATE CONCURRING OPINION;
SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., CONCURRING:

{¶ 32} I fully concur with the majority opinion. I agree that the trial court abused its discretion in finding Donegan in direct criminal contempt of court after he appeared late on the second day of trial. As the Supreme Court of Ohio has cautioned, "'[t]rial courts * * * must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.'" *Disciplinary Counsel v. Bachman*, 163 Ohio St.3d 195, 2020-Ohio-6732, 168 N.E.3d 1178, ¶ 24, quoting *Brown v. United States*, 356 U.S. 148, 153, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). Undoubtedly, Donegan should not have inconvenienced the court, opposing counsel, and the jury, and he certainly was deserving of a reprimand. However, his conduct did not rise to the level of direct criminal contempt. *See In re Contempt of Bensing*, 8th Dist. Cuyahoga No. 112041, 2023-Ohio-1050, ¶ 13-15 (reversing finding of direct criminal contempt when attorney who appeared late was not reckless or indifferent to the court's authority and did not pose any imminent threat to the administration of justice).